Argued and submitted May 15, reversed and remanded for new trial
December 11, 1985

# STATE OF OREGON,
*Respondent,*

*v.*

# ERIC ADAM BALDWIN,
*Appellant.*

# (DA 278-716-8405; CA A34311)

712 P2d 120

Charles P. Denkers, Portland, argued the cause and filed the brief for appellant.

Brenda J. Peterson, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Newman, Judges.

GILLETTE, P. J.

Van Hoomissen, J., dissenting.

## GILLETTE, P. J.

Plaintiff appeals his conviction for carrying a concealed weapon, ORS 166.240, asserting that the trial court erred in refusing to suppress evidence of a hunting knife taken from him while he was detained for the issuance of a citation for possession of less than one ounce of marijuana. ORS 475.992(4)(f). He argues that the officer had no authority to frisk or search him for weapons. We reverse and remand.

Officer Igo, who was in plain clothes, saw defendant sitting in a downtown Portland bus shelter with a girlfriend. Defendant took a brass pipe with a red stem from one pocket of his jacket and a small match box from another. He then took some leafy material from the match box and put it into the pipe. At that point, because he believed that defendant was about to smoke marijuana, Igo approached him and showed him his badge. Defendant handed Igo the pipe. Igo then started patting defendant down and, at the same time, asked him if he was carrying any weapons. Defendant took a hunting knife, which was in its scabbard, from inside his jacket and handed it to Igo. Throughout the encounter, defendant was cooperative and fully complied with Igo's requests. Igo did not arrest him but only cited him to appear on the marijuana and concealed weapons charges.

We first examine whether Igo properly searched defendant incident to an arrest. Igo unquestionably had the authority to stop him and to cite him for possession of less than an ounce of marijuana. ORS 133.072.[1] However, he could not arrest him for that offense, because possession of less than an ounce is only a violation and an officer no longer has the authority to arrest for a violation. ORS 133.310(1);[2] ORS

---

[1] ORS 133.072 provides:

"(1) When a person has committed a violation as defined in ORS 161.565 in the presence of a peace officer, the officer may issue and serve a citation to the person as provided in ORS 133.055 and 133.065.

"(2) The peace officer may stop and detain a person for a violation offense for the purposes of investigation reasonably related to the violation offense, identification of the person and issuance of a citation to the person.

"(3) A peace officer may detain a person pursuant to this section only for such time as is reasonably necessary to investigate and verify the person's identity."

[2] ORS 133.310(1) provides:

"A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed:

475.992(4)(f); *State v. Tallman,* 76 Or App 715, 712 P2d 116 (1985). Igo's search[3] cannot be justified as incident to an arrest for the violation. Neither was it incident to a search incident to an arrest or for a different crime. The discovery of less than one ounce of marijuana, *without more,* does not give probable cause to arrest for the felony of possession of more than an ounce.[4] *State v. Tallman, supra.* Although Igo testified that people in the area where he found defendant often carry weapons, that information alone did not give him probable cause to believe that defendant was carrying a weapon unlawfully. The search was not incident to an arrest.

■ The state's primary arguments in support of the search are that it was a legal statutory frisk for weapons under ORS 131.625 and that, if it was not a statutory frisk, it was proper for Igo to search for and seize the knife to protect himself during the time necessary to issue the citation. The state relies on ORS 131.615(1) and 131.625(1). ORS 131.615(1) permits an officer to stop a person and make a reasonable inquiry if the officer "reasonably suspects that [the] person *has committed a crime* * * *." (Emphasis supplied.) The officer "may frisk a stopped person for dangerous or deadly weapons *if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other persons present."* ORS 131.625(1) (Emphasis supplied.)[5] On

---

"(a) A felony, a Class A misdemeanor or an unclassified offense for which the maximum penalty allowed by law is equal to or greater than the maximum penalty allowed for a Class A misdemeanor, or a major traffic offense as defined in ORS 484.010(5); or

"(b) Any other offense in the officer's presence except traffic infractions as defined in ORS 153.505 and violations as defined in ORS 161.565."

[3] Although defendant handed the knife to Igo in response to Igo's question, the trial court found that he did not consent to the frisk but acquiesced in a show of authority. Igo therefore discovered the knife as a result of his seizure and search of defendant's person.

[4] The trial court stated, in its conclusions of law, that "[i]t is not at all clear that what the officer saw was only a violation as defined by ORS 161.565 and ORS 475.992." However, the court explained that conclusion by stating, in the next sentence, that "[i]t is not unreasonable to believe that if one sees a small quantity of marijuana there is likely to be a larger quantity available." The court's conclusion was based on an approach which we rejected as a matter of law in *State v. Tallman, supra,* and *State v. Mepham,* 46 Or App 839, 613 P2d 500, *rev den* 289 Or 588 (1980). It is not a finding of historical fact, and we are not bound by it.

[5] The statute requires that the officer suspect that the person is *both armed* and *presently dangerous.* Abstractly, we suppose, one could argue that, although a person

their face, the statutes are inapplicable. They apply only to stops related to suspected *crimes.* Possession of less than an ounce of marijuana, however, is merely a violation. ORS 475.992(4)(f). A violation is not a crime; it is not an offense for which a sentence of imprisonment is authorized. ORS 161.505, 161.515, 161.565.

▪ The state argues, however, that there exists a general authority for officers to conduct the kind of pat-down search that occurred here. No statute so provides but, even if such authority existed, the state claims no more for it than the authority conferred by ORS 131.625(1): to frisk a person "if the officer reasonably suspects that the person is armed and presently dangerous * * *." Even if such authority exists—and we do not so hold—the facts here do not meet those criteria.

If Igo did not have—or, at least, did not articulate—a reasonable suspicion that *defendant specifically* was armed and presently dangerous, he had no authority for the frisk under the statute, and he therefore had no authority for it on any basis. Here, there is nothing about defendant's conduct that could have led Igo to fear for his safety or for that of others. Defendant was polite and cooperative throughout the encounter, the offense for which Igo stopped him had no overtones of violence and the incident took place in the early evening in an area where other people were present. The only basis for Igo's action was his stated knowledge of a correlation between being on the mall, being armed and possessing less than one ounce of marijuana.[6] That correlation may be statis-

---

may be armed, he may not be dangerous. Not surprisingly, however, there is little case law applying this distinction. *See* 3 LaFave, *Search and Seizure* § 9.4, 114 n 17; *see also* Commentary, *Oregon Criminal Procedure Code* 28, § 32 (1972) ("the officer must have a reason for being in fear for his safety").

[6] The trial court's specific finding was: "The reason for the frisk was that the officer was aware from prior experience and training that the downtown bus mall has a reputation for weapons-carrying narcotics offenders. In other words, people who possess marijuana in the bus mall area commonly carry weapons." The first sentence is supported by substantial evidence in the record. However, the second sentence misreads the evidence to the extent that it implies a special correlation between possessing marijuana and carrying weapons. In fact, the officer stated that *being on the mall* was the crucial variable, not carrying weapons or possessing narcotics. Not only did the officer articulate no facts specifically relating to defendant, he also did not testify that carrying drugs created an increased likelihood that a person would be

tically or historically correct, but defendant is an individual, not a statistic. An officer must point to facts related to the individual, not to general statistics, to justify an intrusion of this nature. Igo points to no "specific and articulable facts" showing that he had reason to fear for his safety from defendant. *See State v. Valdez,* 277 Or 621, 626, 561 P2d 1006 (1977). Otherwise, the officer's testimony in this case would

---

armed. The relevant testimony, following the officer's first statement that he searched defendant for drugs and weapons, is as follows:

"Q. [Prosecutor] And why for weapons?

"A. Well, it's been my experience as a police officer that many people are armed, especially in the downtown area.

"Q. Was the defendant antagonistic or cooperative?

"A. He was quite cooperative.

"* * * * *

"Q. [Defendant's Attorney] Now also, it's your understanding — isn't it true that people who carry less than one ounce of marijuana you know for a fact do not necesssarily carry weapons?

"A. Repeat the question.

"Q. The people who carry under — to your knowledge the people who carry under an ounce of marijuana — are they known to carry weapons commonly?

"A. Some do and some don't.

"Q. Do most —

"A. Shit — how can you make a generalization one way or the other?

"Q. Well, the generalization is, do people carry — to your knowledge, do people who carry under an ounce of marijuana in their possession, are they commonly known to carry weapons?

"A. The people who hang out in the mall —

"Q. I am not talking — I am talking about people who carry less than an ounce of marijuana — are they commonly known to carry weapons?

"A. And I will state again the people downtown on the mall do —

"Q. No — I don't want to know about the people downtown, I am asking you a question.

"[The Court] Mr. Joondeph, he can qualify his answer.

"Q. [Defendant's Attorney] OK.

"A. As I have stated before, the people in the mall area downtown commonly do carry weapons and commonly do have under an ounce of marijuana on their person. Persons in the geographical area in the city —

"Q. So you are stating that persons who are down — people who are downtown, did you say, commonly carry marijuana and commonly carry weapons?

"A. That's correct, in the mall area."

justify frisking any person on the mall who is stopped for any reason, including such violations as jaywalking, on no basis other than that the person was on the mall.

People are entitled to be evaluated on their individual behavior, not that of groups to which they may belong. *See Reid v. Georgia,* 448 US 438, 100 S Ct 2752, 65 L Ed 2d 890 (1980) (that a person fits a "drug courier profile" does not create reasonable suspicion justifying a stop in the absence of particular suspicious conduct by the person); *Ybarra v. Illinois,* 444 US 85, 100 S Ct 338, 62 L Ed 2d 238 (1979) (that a person was in a bar when police entered to search for contraband pursuant to a warrant provided neither probable cause to search the person nor reasonable suspicion that he may be armed and dangerous).[7] There may be situations in which the nature of a person's offense can play a legitimate role in determining whether that person may reasonably be thought likely to be armed and dangerous, such as an armed robbery, when the possibility of violence is inherent in the offense. In the present case, however, the fact of the offense is inadequate, without some additional information specifically related to the person involved, to justify a frisk. *See State v. Valdez, supra,* 277 Or at 628.

Reversed and remanded for a new trial.

**VAN HOOMISSEN, J.,** dissenting.

I would sustain the trial court's ruling on the motion to suppress and affirm defendant's conviction for carrying a concealed weapon. Therefore, I respectfully dissent.

Defendant concedes that he was lawfully stopped. ORS 133.072. He does not challenge the seizure of the marijuana, only the seizure of the knife. He first contends that officer Igo observed him committing only a violation and that the stop-and-frisk statutes are inapplicable to violations.[1] According to defendant, Igo's authority allowed him to stop

---

[7] We cite the federal cases as helpful in analyzing this issue, but we decide this case under Article I, section 9, of the Oregon Constitution, and they are not controlling.

[1] ORS 131.615 provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

and detain defendant only so long as was necessary to issue a citation. Second, he contends that, even if Igo could frisk him for weapons, any frisk was unreasonable, because Igo lacked reason to believe that defendant was armed and presently dangerous.[2] I disagree with both contentions.

Igo observed defendant in possession of marijuana. That gave him reason to believe that defendant had committed an offense. He testified that he knew from experience that people who possess narcotics in the downtown bus mall area often carry weapons. The trial court concluded that that knowledge gave Igo a reasonable basis to suspect that defendant was armed and presently dangerous. *See* ORS 131.625(1). Even if ORS 131.605 *et seq* are inapplicable because Igo observed only an offense, he nevertheless was justified in frisking defendant for weapons, because he had a reasonable suspicion that defendant was armed and presently dangerous. That the offense observed is classified as a violation cannot require that the officer must endanger his life, or the lives of others present, in order to investigate that offense. *See Pennsylvania v. Mimms,* 434 US 106, 110, 98 S Ct 330, 54 L Ed 2d 331 (1977).

In *State v. Tourtillot,* 289 Or 845, 618 P2d 423 (1980), *cert den* 451 US 972 (1981), the Supreme Court reviewed the legislative history of Oregon's stop-and-frisk statutes and explained:

"[T]he significance of this legislative history is that the [Criminal Law Revision] Commission knowingly and explicitly rejected proposed provisions that the Code was

---

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

[2]ORS 131.625 provides:

"(1) A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present.

"(2) If, in the course of the frisk, the peace officer feels an object which he reasonably suspects is a dangerous or deadly weapon, he may take such action as is reasonably necessary to take possession of the weapon."

intended to completely define the scope of permissible search and seizure." 289 Or at 852 (footnote omitted.)

I conclude that, in enacting ORS 131.605 *et seq*, the legislature did not intend to prohibit frisks for weapons when a police officer investigates an offense and he reasonably suspects that the person being investigated is armed and presently dangerous.[3]

Both Article I, section 9, of the Oregon Constitution and the Fourth Amendment impose limits on search and seizure in order to prevent arbitrary and oppressive governmental invasion of a citizen's privacy and personal security. *State v. Tourtillot, supra; Delaware v. Prouse,* 440 US 648, 653-54, 99 S Ct 1391, 59 L Ed 2d 660 (1979); *Pennsylvania v. Mimms, supra,* 434 US at 108-109. The question here is whether the frisk for weapons, made when defendant was lawfully detained, was reasonable. Igo knew from experience that persons possessing narcotics in the downtown bus mall area often carry weapons. Thus, the justification for a frisk, Igo's safety, was both legitimate and weighty. *See Pennsylvania v. Mimms, supra,* 434 US at 110; *Terry v. Ohio,* 392 US 1, 23, 88 S Ct 1868, 20 L Ed 2d 889 (1968); *State v. Riley,* 240 Or 521, 515, 402 P2d 741 (1965). We should weigh any intrusion into defendant's privacy occasioned by the frisk against that justification. The intrusion here was slight; it involved asking defendant if he had a weapon, whereupon defendant, *not Igo,* reached into the jacket and produced a knife.[4] Balanced against Igo's legitimate concerns for his safety, that limited intrusion was reasonable.

---

[3] I read the majority opinion to say that the *real* problem with the frisk in this case is that the prosecutor failed to elicit any explicit testimony from Igo that he believed defendant was "armed and presently dangerous." 76 Or App at 726-27.

[4] Defendant also argues in this court that the frisk was too intrusive, because Igo unzipped some of defendant's jacket pockets. That argument was not raised at trial, and I would not consider it.