Argued and submitted December 20, 1984, affirmed December 11, 1985

STATE OF OREGON,
*Appellant,*

*v.*

JOHN D. TALLMAN,
*Respondent.*

(J83-2765; CA A31396)

712 P2d 116

Brenda J. Peterson, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

Van Hoomissen, J., dissenting.

## GILLETTE, P. J.

The state appeals a pretrial order suppressing evidence found during a warrantless search of defendant's motor vehicle. We affirm.

A Douglas County Deputy Sheriff saw defendant and a companion sitting in the front seat of a car parked in an unlighted area of a parking lot. The men appeared to become nervous and to make furtive movements on becoming aware of the deputy's presence. To the deputy, it appeared that they were reaching down to the floor as if "they were trying to stash something in the car." The deputy decided to question the car's occupants. On his approach, he "noted a strong odor of incense and a smell of burnt marijuana." When questioned about the odor, defendant denied that anything had been smoked in the car. The deputy asked defendant and his companion to step from the car. He then searched the front passenger area, discovering a baggie containing marijuana in plain view on the front floor board and a recently smoked water pipe under the front seat.

After that discovery (made within two minutes of instituting the search), the deputy continued his search. Several grocery sacks were on the rear seat. The deputy testified that defendant and his companion appeared to become more nervous when he neared the bags. One contained groceries; another, books. A third bag was folded closed. The deputy picked up the bag and found it to be lightweight and about one-half full of a soft material. He smelled a strong odor of marijuana emanating from it. He opened the bag, revealing approximately seven and one-half ounces of marijuana. He then arrested defendant.

In its suppression order, the trial court found that there was probable cause to search the vehicle but, relying on *State v. Turchik,* 53 Or App 499, 632 P2d 497 (1981), and *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983), it nonetheless held that evidence from the seizure of the paper sack should be suppressed, because the seizure was not reasonably related to the circumstances surrounding the original violation. The court also noted that the case was not factually similar to *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982).

On appeal, the state argues that the search was

justified on two grounds. First, it argues that the deputy had probable cause to search and that exigent circumstances excused his failure to get a warrant before opening the sack. To the extent that *State v. Turchik, supra,* is inconsistent with this analysis, the state says, that case should be considered to have been modified by *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982). Second, the state argues that the search was incident to a valid arrest and was therefore proper under *State v. Caraher, supra,* and *State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984).

Defendant argues that the state's theory of search incident to arrest is being raised for the first time on appeal. We think that the theory was implicit in the state's argument below that the case was controlled by *Caraher,* which details the elements of a search incident to arrest under Oregon law. We therefore reach the issue. The particular circumstances of this case do, however, raise some peculiar complications.

Possession of less than one ounce of marijuana, the offense that the state argues justified the deputy's search, is statutorily defined as a "violation" rather than a "crime." ORS 161.505; ORS 475.992(4)(f). In 1983, the legislature removed a peace officer's authority to arrest for a violation. ORS 133.310(1)(b).[1] Because the deputy could not have arrested defendant for the violation, the subsequent search could not have been incident to an arrest.[2] A peace officer may only "stop and detain a person for a violation offense for the purposes of investigation reasonably related to the violation offense, identification of the person and issuance of a citation to the person." ORS 133.072(2).

The deputy's actions, including his discovery of the baggie of marijuana and the water pipe, were logically justified as an investigation reasonably related to the offense. However, ORS 133.072(2) is not a legislative preservation of the

---

[1] The state's reliance on *State v. Flores, supra,* is misplaced because, at the time of the search in that case, police officers had the authority to arrest for a violation. *See State v. Flores, supra,* 68 Or App at 637 n 9.

[2] ORS 133.310(1)(b) eliminates the previously inconsistent treatment of violations compared with traffic infractions, for which arrest was prohibited by ORS 484.353(2)(a). Although neither kind of offense permits a jail sentence, until 1983 violations could lead to arrest, but traffic infractions could not. *See* House Committee on Judiciary, May 30, 1983, Minutes, SB 380, Exhibit O.

search incident to arrest exception for warrantless searches in connection with violations. Neither does it permit extensive custodial searches such as took place in this case. "A peace officer may detain a person pursuant to this section only for such time as it is reasonably necessary to investigate and verify the person's identity." ORS 133.072(3). Here, the search exceeded that limit. The search of the sack cannot be justified as incident to an arrest for the violation. The state's appeal must stand or fall on its second theory: that there was probable cause, after discovery of a small amount of marijuana in defendant's car, to believe that there was more contraband in the car—enough to permit an arrest.[3]

Before the reduction of the offense of possession of less than an ounce of marijuana to a violation, we held that the possession of small quantities of marijuana gave rise to probable cause to search for additional contraband. *See State v. Krohn,* 15 Or App 63, 65, 514 P2d 1359 (1973), *rev den* (1974). More recently, we have held that, after discovering less than one ounce of marijuana, "the officer's observations and the statements of the defendant and his passengers gave the officers probable cause to search the vehicle for more marijuana * * *." *State v. Turchik, supra,* 53 Or App at 503. The negative implication of that language—but not its explicit holding—is that something more than the mere observation of a small amount of marijuana is required to justify the belief that more is present. In *Turchik,* that further requirement was met by the conflicting stories told by the people in the car where the marijuana was found.

The question naturally arises as to whether the *Turchik* rationale was necessary in the light of *Krohn:* That is, does the discovery of less than one ounce of marijuana *in itself* create probable cause to search for more, or must there be other circumstances in addition to the contraband? We think that *Turchik* was correct and that *Krohn* is no longer controlling. There are three reasons for our conclusion.

First, at the time of the search in *Krohn,* possession

---

[3] The state must also show either that there were exigent circumstances justifying the warrantless search for any such contraband, or that the search was proper incident to a presumed arrest for possession of the marijuana.

of less than an ounce of marijurana was a Class A misdemeanor for the first conviction and a Class B felony thereafter. ORS 167.207 (*amended by* Or Laws 1973, ch 680, § 1; *amended by* Or Laws 1974, ch 67, § 2; *repealed by* Or Laws 1977, ch 745, § 54). There was little reason for a person considering the criminal consequences of possession to be particularly concerned about the precise amount of marijuana being possessed. It was reasonable to conclude that a person who possessed less than an ounce might have more. However, when the 1973 legislature reduced the offense from a crime to a violation, subject to a fine of no more than $100, regardless of the number of times charged, the connection between possession of a small amount of marijuana and of a larger amount became more uncertain. Or Laws 1973, ch 680, § 1; ORS 475.992(4)(f). Possession of more than an ounce remains a Class B felony, ORS 475.992(4)(a), and people are likely to limit the amount in their possession with that distinction in mind. The statutory change undermines the factual predicate of *Krohn.*

The second reason is that it would be incongruous, in the light of the legislative policy to decriminalize possession of less than one ounce of marijuana and to eliminate the possibility of arrest, to hold that probable cause to search for more flows automatically from the discovery of less. To allow the intrusion of a search on that basis would subject violators to some of the criminal sanctions which the legislature intended to remove. As a matter of law, possession of less than one ounce cannot by itself create probable cause to search for more.

■　　　Third, the closest precedent supports this view. In *State v. Mepham,* 46 Or App 839, 613 P2d 500, *rev den* 289 Or 588 (1980), this court faced the question of whether observation of a container of marijuana on a table in a house supplied probable cause to support a search warrant to search the entire house for more marijuana. We held that it did not, stating,

> "In some cases, some evidence of the presence of an illegal substance may establish probable cause [to believe] that more of the same material will be found. *See State v. Krohn,* [*supra*] * * *. We do not consider this to be such a case. The affidavit does not provide enough facts to warrant the reasonable

suspicion that the container was not the household's entire supply." 46 Or App at 842.

In view of its holding, one is hard put to reconcile *Mepham's* citation to *Krohn*. Still, taking *Turchik* and *Mepham* together, we think it clear that *the discovery in a car of less than one ounce of marijuana (a violation) cannot, by itself, justify a general search of the car.* Other, additional facts must make it appear reasonable to believe that there is more contraband concealed in the car.

Although possession of less than one ounce of marijuana does not itself create probable cause to search for more, it is still relevant in determining whether probable cause exists. Other facts, including suspicious actions and inculpatory statements, may unite with the possession to produce the necessary level of probability. *See State v. Anspach,* 298 Or 375, 692 P2d 602 (1984). That is what we held had occurred in *State v. Turchik, supra.* We now turn to the facts of this case to determine if it also occurred here.

■ Although the officer saw defendant and his companion make furtive movements before he reached their car, all of those actions were sufficiently explained by the discovery of a baggie of marijuana on the front floor and a water pipe under the seat. The odor of incense was sufficiently explained by evidence that incense had been burned in the front ash tray. The obvious conclusion from what the officer found was that defendant and his companion had been smoking marijuana and had used incense as part of that activity. The officer had reason to believe that the marijuana which he found belonged to defendant and that defendant had violated ORS 475.992(4)(f). The evidence that the officer found sufficiently explained the furtive gestures. There was no objective basis for believing that defendant had more marijuana than that in the baggie, and the officer therefore had no probable cause to search further. *State v. Mepham, supra.* The trial court correctly suppressed the evidence.

Affirmed.

**VAN HOOMISSEN, J.,** dissenting.

I would reverse the trial court's order suppressing evidence found during the search of defendant's car. Therefore, I respectfully dissent.

The deputy found a baggie of marijuana on the floor board of defendant's car. He found a recently smoked water pipe under the front seat. He noted a strong odor of incense and the smell of burnt marijuana. On becoming aware of the deputy's presence, defendant and his companion made "furtive" movements, as if they were trying to hide something. On that evidence, I would hold that the deputy had probable cause to believe that there was more marijuana in the car. Considering the totality of the circumstances, it was not unreasonable for him to continue searching the interior of the car.

While the explanations and conclusions described in the final paragraph of the majority's opinion are plausible, they are not the *only* explanations and conclusions that the deputy could reasonably have drawn. The trial court ruled that the deputy had probable cause to search the car. I agree. He had an objective basis for believing that defendant had more marijuana than that in the baggie and, therefore, he had probable cause to search further. *See State v. Anspach,* 298 Or 375, 692 P2d 602 (1984); *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982); *State v. Kirsch,* 69 Or App 418, 686 P2d 446 (1984); *State v. Brody,* 69 Or App 469, 686 P2d 451 (1984); *State v. Turchik,* 53 Or App 499, 632 P2d 497 (1981); *State v. Mepham,* 46 Or App 839, 613 P2d 500, *rev den* 289 Or 588 (1980); *State v. Krohn,* 15 Or App 63, 514 P2d 1359 (1973), *rev den* (1974).

The majority's result attributes an intent to the legislature that I do not see in the statutes or in any legislative history cited by the majority. The legislature intended to give users of small quantities of marijuana, less than an ounce, a break. I think that it would be stunned to learn that a majority of this court believes that it intended to give the same concession to people, like defendant, who abuse the law's leniency.