Argued and submitted July 27, 1994, reversed and remanded for new trial
June 28, 1995

## STATE OF OREGON,
*Respondent,*

*v.*

## ERIC LYNN LANE,
*Appellant.*

## (C9211-36992; CA A79604)

898 P2d 1358

David E. Groom, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

Riggs, J., dissenting.

## DEITS, P. J.

Defendant appeals his conviction for possession of a controlled substance and carrying a concealed weapon. ORS 475.992(4); ORS 166.240. He contends that the trial court erred in denying his motion to suppress evidence seized pursuant to a stop. We reverse and remand.

At 2:30 a.m. on November 12, 1992, Deputy Sheriff Staton observed a pickup truck make an abrupt turn into a Plaid Pantry parking lot. Staton parked across the street and watched the truck and its two occupants for approximately 20 minutes. After Deputy McCormick responded to Staton's request for assistance, Staton drove into the lot to contact the occupants, who were seated in the truck. Staton contacted the passenger, while McCormick contacted the driver, defendant. In response to Staton's questions, the passenger said that defendant was driving him home from the Genesis Club, where they had had a few drinks. The passenger had a moderate odor of alcohol on his breath and his eyes were dilated and slightly watery. Staton placed the passenger in the patrol car until he could determine the condition of the driver. The passenger was later released.

While Staton was with the passenger, McCormick was speaking with defendant. Although defendant produced his identification when asked, he gave conflicting answers as to McCormick's questions about the truck's registration.[1] McCormick testified that defendant seemed very nervous and agitated, that his hands were shaking, and that he never stopped moving while McCormick spoke with him. When McCormick noticed something on the console that he thought might be a knife, defendant identified it as a pipe and showed it to the officer. At the hearing, both officers described it as a marijuana pipe, and Staton stated that it contained residue of marijuana.

At some point during their conversation, McCormick asked defendant to step out of the truck. Staton then approached defendant and, based on his knowledge that

---

[1] Defendant first said that the truck belonged to him, but then said it belonged to his sister. He then said that he had just bought the truck and that it was not registered yet. Staton ultimately ran a check on the license plate and identified the registered owner as someone other than defendant.

defendant had been drinking and his observations of defendant's dilated and slightly bloodshot eyes, his poor balance, and the odor of alcohol on his breath, Staton arrested defendant for driving while under the influence of alcohol. During a pat-down search of defendant, Staton unzipped defendant's fanny pack and saw a switchblade, which he removed. He asked defendant for consent to search the truck, but defendant refused.

Because the Plaid Pantry parking lot was posted as a tow-away zone and because the sheriff's office was unable to contact the registered owner of the truck, Staton decided to have the truck towed to an impound lot, pursuant to the sheriff's department operating procedures. In preparation for the tow, Staton conducted an inventory search of the truck's contents, pursuant to the Multnomah County Procedures Manual. Among other items found in the truck, Staton found a gun, the marijuana pipe, a small scale, and a small, black film canister. Staton opened the canister and found a plastic bag with a substance he recognized as methamphetamine.

Shortly thereafter, McCormick removed defendant's wallet from the dashboard, for the purpose of returning it to defendant. McCormick testified that he opened the wallet to make sure that it did not contain any weapons or means of escape and to confirm defendant's identity. Inside the wallet was a plastic baggie containing what McCormick suspected to be methamphetamine. Staton questioned defendant about the substances found in the canister and the wallet, and defendant made statements in response to those questions.

Defendant was charged by indictment with possession of a controlled substance (methamphetamine), carrying a concealed weapon, and unlawful possession of a firearm. ORS 475.992(4); ORS 166.240; ORS 166.250. In a pretrial motion to suppress all physical evidence and statements, defendant argued that he was unlawfully stopped and frisked and that the officers unlawfully searched the film canister and the wallet. The trial court concluded that defendant was not stopped until McCormick asked him to step out of the truck, and that the stop was lawful based on the officers' reasonable suspicion that defendant had committed a crime. After concluding that the subsequent searches were also

lawful, the court denied defendant's motion to suppress. The charge of unlawful use of a firearm was dismissed, and defendant was convicted, on stipulated facts, of the other two offenses.

■ On appeal, defendant assigns error to the denial of his motion to suppress. Although we are bound by the trial court's findings of historical facts that are supported by evidence in the record, *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), we must determine if those facts are sufficient to satisfy constitutional standards. *State v. Warner*, 284 Or 147, 585 P2d 681 (1978).

Defendant first contends that he was "stopped" when the officers approached his truck from either side.[2] ORS 131.605(5) defines a stop as "a temporary restraint of a person's liberty by a peace officer lawfully present in any place."[3] A person is stopped if, under the circumstances, "a reasonable person would have believed that his liberty had been temporarily restrained." *State v. Ehly*, 317 Or 66, 76, 854 P2d 421 (1993). In this case, defendant contends that, because "[n]o citizen would feel free to leave if officers approached from either side of the vehicle and began asking questions," he was stopped "as soon as the officers approached the vehicle."

■■ It is axiomatic that not every encounter between a law enforcement officer and a citizen rises to the level of a statutory stop. As explained in *State v. Kennedy*, 290 Or 493, 498, 624 P2d 99 (1981), "a peace officer may approach a

---

[2] At the hearing, defendant argued that he was unlawfully stopped when the officers blocked in his truck and approached his windows, when McCormick asked for and retained his identification, and when McCormick asked him to step out of the truck. The trial court concluded that only the last action constituted a stop, and that the stop was lawful because the officers had a reasonable suspicion that defendant had committed a crime. *See* ORS 131.615(1). Defendant does not assign error to the court's conclusion as to that action, nor does he challenge the court's conclusions regarding the positioning of the patrol car or the request for identification. Defendant's sole argument is that he and his passenger were stopped unlawfully when the officers approached both sides of the truck.

[3] Our analysis of defendant's rights under ORS 131.605 to 131.625 is substantially the same as the analysis under Article I, section 9, of the Oregon Constitution. *State v. Ehly*, 317 Or 66, 76 n 8, 854 P2d 421 (1993). In addition, a "stop," as used in ORS 131.615, is a "seizure" under Article I, section 9, and the Fourth Amendment. *Id.* at 77 n 9.

citizen, identify himself as an officer and ask some preliminary questions without making a 'stop.' " Similarly, as the court held in *State v. Holmes*, 311 Or 400, 410, 813 P2d 28 (1991),

> "law enforcement officers remain free to approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them"

without transforming the encounter into an Article I, section 9, seizure. Accordingly, we have held that, absent other circumstances to make the encounter coercive, a police officer who approaches a parked car and questions its occupants has not shown sufficient authority to cause a reasonable person to believe that he or she is not free to leave. *See, e.g., State v. Gilmore*, 123 Or App 594, 860 P2d 882, *rev den* 318 Or 171 (1993). The mere approach of the two officers, without more, does not constitute a qualitatively greater show of authority. We conclude that defendant was not stopped or seized within the meaning of ORS 161.615(1) or Article I, section 9, at the time the officers approached the vehicle.[4] The trial court did not err in so holding.

Defendant also argues that the search of his fanny pack was unlawful. In his brief to this court, however, he states that he "is not asking the court to suppress anything based on the [search]"; rather, he is only asserting that the discovery of the knife may not be used to establish probable cause to arrest. Consequently, it is unnecessary to address the propriety of that search.

Defendant next contends that the administrative procedure for inventorying the contents of his truck did not authorize Staton to open the film canister discovered in the truck. The trial court concluded that the officer lawfully discovered the film canister pursuant to a properly authorized administrative procedure for conducting inventory searches.[5] *See State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984)

---

[4] Defendant states that his argument is also based on the Fourth Amendment to the federal constitution. However, he advances no reason why the outcome on this issue should be different under the Fourth Amendment than under Oregon law.

[5] Defendant does not challenge that conclusion.

(describing constitutionally permissible inventory processes). It then concluded that, although the opening of the canister could not have been justified on the basis of inventory needs, Staton had developed probable cause to believe that defendant was in possession of a controlled substance and, therefore, was justified in conducting a search incident to arrest for that crime:

> "The officer found the canister [during the inventory search.] He himself has had experience and training in narcotics and where it's kept, according to his testimony. He's seen those kinds of canisters containing drugs in 20 to 30 prior occasions. And remember, too, he was already aware of the pipe, the marijuana pipe in the car. And collectively that information gave him probable cause to believe that there was some sort of Possession of [a] Controlled Substance crime, and he would have a right to make a search incident to the arrest."

We have held that an officer who is conducting an authorized inventory of an arrestee's personal property may not open a closed, opaque container for the sole purpose of inventorying its contents. *State v. Ridderbush*, 71 Or App 418, 692 P2d 667 (1984). However, if in the course of the inventory process the officer develops probable cause to believe that the arrestee has committed a crime other than the one for which he or she was arrested, the officer may conduct a search incident to the presumed arrest for that other crime. *See State v. McCrory*, 84 Or App 390, 394, 734 P2d 359 (1987) (seizing and opening paperfold discovered during inventory was justified by probable cause to believe that the defendant was in possession of controlled substance); *see also State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986) (when probable cause to arrest exists, search incident to arrest is authorized even if officer has yet to actually arrest person being searched). The test for probable cause is "what [the] officer actually believed, based upon the underlying facts of which he was cognizant, together with his own training and experience," and whether that belief was objectively reasonable in the circumstances. *Owens*, 302 Or at 204.

Here, Staton testified that he believed that defendant was in possession of a controlled substance. We conclude, however, that that belief was not objectively reasonable under these circumstances. Because possession of less than

an ounce of marijuana is a "violation," ORS 475.992(4)(f), for which a person may not be arrested, ORS 133.310(1)(b), probable cause to arrest could not have been based solely on the residue of marijuana discovered in the pipe. Moreover, Staton's observation of less than one ounce of marijuana could not, by itself, have created probable cause to believe that there was more contraband in the truck — enough to justify an arrest. *See State v. Tallman,* 76 Or App 715, 719-20, 712 P2d 116 (1985) (possession of less than one ounce of marijuana does not itself create probable cause to search for more).

Similarly, an unopened film canister does not, itself, provide probable cause to believe that it contains contraband. Staton testified that, based on his training and his experience on 20 to 30 occasions of finding drugs in film canisters, he subjectively believed that the one he found in defendant's truck contained narcotics. However, a film canister is not the type of container that is "so uniquely associated with the storage and transportation of controlled substances" that it, alone, might provide an officer with training and experience probable cause to believe that it contains a controlled substance.[6] *See State v. Herbert,* 302 Or 237, 242, 729 P2d 547 (1986); *see also McCrory,* 84 Or App at 393-94 (concluding that a paperfold, or "bindle," is such a unique container).

The only other item found during the inventory search that might provide probable cause is what Staton described as "a small set of scales, primarily used to weigh pharmaceuticals." However, the record contains few other references to that discovery. We thus have very little information as to the significance of the scale, such as where it was found in relation to the marijuana pipe and/or the film canister. Based on this record, the scale adds little to support a finding of probable cause.

Finally, we conclude that, even considered collectively, the marijuana residue, the film canister, and the scale, along with defendant's nervousness and agitation, did not

---

[6] We would note that this is different from a situation in which a person is arrested for a drug offense, and the police conduct a search incident to arrest to obtain *additional* evidence relevant to the crime prompting the arrest. In those circumstances, a film canister is a reasonable place to search for such additional evidence. *State v. Holmes,* 17 Or App 464, 522 P2d 900 (1974).

provide an objectively reasonable basis to believe that defendant was in possession of either an ounce of marijuana or some other controlled substance, thus justifying an arrest and search incident thereto. We do not doubt that, given the circumstances, Staton suspected that defendant was involved with narcotics. Nonetheless, "a suspicion, no matter how well founded, does not rise to the level of probable cause." *State v. Verdine*, 290 Or 553, 557, 624 P2d 580 (1981).

The state argues that this case is similar to *State v. Diaz*, 29 Or App 523, 564 P2d 1066 (1977), in which we concluded that, under the circumstances, the officer had sufficient information to justify a warrantless search and seizure of a film canister and its contents. In that case, the police executed a search warrant at the defendant's residence and then arrested him for receiving stolen property. As he was being led outside, the defendant nudged a film canister towards another resident and told her to get the film developed. We concluded that the officer had probable cause to search the container and seize its contents, based on (1) the officer's knowledge that the defendant was a narcotics user, that drugs had already been found in the house, and that drugs are often carried in that type of container; (2) the defendant's furtive gesture in nudging the canister toward another resident; (3) the unlikelihood that an arrestee being taken away in handcuffs would be concerned about having film developed; and (4) the unlikelihood that an old, beat up metal container would contain recently used film, especially when the officer knew that film was no longer sold in such metal containers. 29 Or App at 535.

A case that is closer to the one before us is *State v. Smith*, 97 Or App 114, 775 P2d 335, *rev den* 308 Or 315 (1989). In that case, the defendant was arrested for driving under the influence of intoxicants. While conducting a lawful search of the defendant pursuant to a jail inventory procedure, an officer found a black compact in one of the defendant's boots. The officer opened the compact and found cocaine. We concluded that the officer had probable cause to arrest the defendant for possession of drugs and that the search of the compact was incident to the presumed arrest on that charge. *Id.* at 116. We based our conclusion on the fact that the officer had training and experience in drug detection,

that the officer had found controlled substances in containers similar to the defendant's compact at least one hundred times, and that the defendant was concealing the container. *Id.* at 116-17.

In both of those cases, as in other, similar cases, however, it was the specific conduct of the suspects towards the unopened containers that elevated the officers' suspicions to probable cause.[7] *See also Herbert* (the defendant furtively removed paperfold from his pocket while he attempted to distract officer); *State v. Massey,* 90 Or App 95, 750 P2d 1192 (1988) (the defendant's attempt to conceal box along with baggie of marijuana gave probable cause to believe that the box, like the baggie, contained contraband). Here, in contrast, the film canister was found on the front seat of the truck, and defendant did not take any action or make any statement in reference to the canister to provide objectively reasonable grounds to believe that it contained anything other than film.

■ We conclude that Staton lacked probable cause to believe that defendant was in possession of a controlled substance and, thus, the search of the film canister cannot be justified as incident to an arrest on that charge. The state's one-sentence alternative argument, that the automobile exception to the warrant requirement "authorized search of the vehicle," is also without merit. That exception authorizes a warrantless search of an automobile, provided that the automobile is mobile when it is stopped by police and probable cause exists for the search. *State v. Brown,* 301 Or 268, 274, 721 P2d 1357 (1986). According to Staton's testimony, however, it was not until *after* he began searching the vehicle that he suspected that it contained narcotics. Thus, the search could not have been based on probable cause. Because the state offers no other justification for opening the canister, the evidence discovered as a result of that unlawful search should have been suppressed.

■ Finally, defendant argues that McCormick's search of the wallet was also unlawful. The trial court concluded that

---

[7] Of course, where there is no persuasive evidence that a crime has occurred, actions taken by a defendant to protect his or her constitutionally protected right against warrantless searches may not be used to establish probable cause. *State v. Scarborough,* 103 Or App 231, 796 P2d 394 (1990); *State v. Lavender,* 93 Or App 361, 762 P2d 1027 (1988).

the opening of the wallet was a lawful search for crime evidence incident to defendant's arrest for possession of a controlled substance. *See State v. Holmes*, 17 Or App 464, 470, 522 P2d 900, (1974) (holding that in a search incident for arrest for drug activity, a wallet is a reasonable place to find narcotics). However, the search cannot be justified on those grounds because, as discussed above, the officers did not have probable cause to arrest defendant for that crime.

■ The state contends that the search was also justified for the reasons recounted by McCormick — to ensure that defendant had not given a phony identification and to look for hidden weapons or escape devices.[8] We disagree. First, McCormick testified that the identification card offered by defendant looked valid, that it appeared to belong to defendant, and that the information on the card was consistent with who defendant claimed to be. The mere possibility that, nonetheless, the card was not defendant's, cannot justify a warrantless search of defendant's wallet.[9] Second, a search for officer safety incident to arrest must be based on "a reasonable suspicion, based on specific and articulable facts, that the person in custody poses serious threat of harm or escape." *State v. Hoskinson*, 320 Or 83, 87, 879 P2d 180 (1994). McCormick articulated no such safety concerns to justify the search of the wallet in this case. We conclude that the warrantless search of defendant's wallet was unlawful and that the evidence discovered therein should have been suppressed.

Reversed and remanded for a new trial.

**RIGGS, J.,** dissenting.

I agree with the majority that, because possession of less than an ounce of marijuana is a violation for which a person cannot be arrested, the officer's discovery, in the cab of defendant's pickup, of the pipe containing residue of less than

---

[8] The state does not assert that the wallet was seized as part of the inventory process. Rather, McCormick testified that he intended to return the wallet to defendant after he looked inside.

[9] Although evidence of identity is relevant to the offense of providing false information to a police officer under ORS 807.620, the state does not argue that McCormick had probable cause to arrest defendant for that offense. *See State v. Nelson*, 102 Or App 106, 109 n 2, 792 P2d 486 (1990) (evidence of identity relevant to arrest under ORS 807.620, but state did not justify search on that basis).

one ounce of marijuana did not, *by itself*, give rise to probable cause to believe that there was contraband in the truck sufficient to justify an arrest. *State v. Tallman*, 76 Or App 715, 719, 712 P2d 116 (1985). I also agree that neither the set of scales nor the unopened film canister, *by themselves*, provided probable cause to believe that the film canister contained contraband. I *would* hold, however, that the three items *together*, and considered in the light of the officer's knowledge and experience and defendant's nervousness and agitation, provided probable cause to believe that defendant had committed the crime of possession of a controlled substance. Accordingly, I would hold that the officer could conduct a search incident to the presumed arrest for that crime, *State v. Owens*, 302 Or 196, 729 P2d 524 (1986); *State v. McCrory*, 84 Or App 390, 392, 734 P2d 359 (1987), and would affirm the trial court's holding that the officer was permitted on that basis to open the film canister and to test its contents and that those contents are admissible in his trial.

Contrary to the majority's view, I do not think that it was essential that defendant behave furtively specifically with regard to the closed container. Here, defendant was nervous and agitated generally. Additionally, the fact that we are not informed of the exact location of the set of scales in relation to the pipe or film canister is of no consequence to me. The discovery of those items in the pickup cab, together with the officer's knowledge of their use with drugs, gave the officer probable cause to believe that contraband would be found.

In the light of my view as to the search of the film canister, I would also hold that the officer had probable cause to search defendant's wallet for drugs. I would affirm the trial court's denial of the motion to suppress and therefore dissent.