Argued and submitted April 22, reversed and remanded July 2, 1997

## STATE OF OREGON,
*Respondent,*

*v.*

## CAREN SUE BROWNLIE,
*Appellant.*

(95-0949; CA A93002)

941 P2d 1069

Wm. David Falls argued the cause and filed the brief for appellant.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

After a stipulated facts trial to the court, defendant was convicted of possession of a controlled substance. ORS 475.992. She appeals and assigns error to the trial court's denial of her motion to suppress. We reverse.

The record shows the following facts. As a security measure, the presiding judge of the circuit court ordered that entry to the Clackamas County Courthouse be restricted to a single entrance and that members of the public be screened for weapons before entering the building. Signs posted outside the entrance to the courthouse and inside at the screening station notify those desiring entry that they are subject to screening. Those desiring entry are required to pass through a metal detector, and hand-carried items are subjected to an X-ray machine.[1] A private contractor operates the screening station under the supervision of the sheriff's office.

On the date in question, the operator of the x-ray machine contacted the sheriff's deputy on duty and asked him to look at the x-ray image of defendant's purse. The deputy identified what he believed to be the image of a marijuana pipe. He pointed to the image on the screen and asked defendant if the object was a marijuana pipe. Defendant confirmed that it was. Taking the purse in hand, the deputy told defendant that he was going to search it. He escorted defendant to a table about 10 feet away from the screening area and emptied the purse into a plastic tub. He found the marijuana pipe in the contents of the purse, smelled the burned residue in the bowl and identified it as marijuana. The evidence is uncontroverted that defendant did not give express consent to the deputy to search the interior of her purse.

The deputy then asked defendant if there was any additional contraband in her purse. Defendant denied that there was. The deputy then testified about what happened next:

---

[1] According to the screening policy, hand-carried items were also subject to physical inspection for weapons. However, that policy is not implicated by the facts in this case.

"[Prosecutor]   And did she give you any response either in your indication that you were going to—or your request that you were going to further search her purse?

"[Deputy]   I told her I was going to check—I was going to search her purse.

"[Prosecutor]   And how did she respond, in combination about the request whether there were any more drugs in her purse or the fact that you were going to search her purse?

"[Deputy]   She reached in and handed me I believe it was a brown, small—little brown clutch purse. It was a zippered purse. I opened it up and I found a short straw that was cut in half in there, a razor blade and a baggie with white powder in it."

The deputy asked defendant what was in the baggie and defendant first told him that it was talcum powder and then admitted that it was methamphetamine. The deputy placed defendant under arrest for possession of a controlled substance and escorted her to the sheriff's office. At the sheriff's office, the deputy searched the entire contents of defendant's purse including a second clutch purse in which he found five baggies containing a white powder that defendant identified as methamphetamine.

Before trial, defendant moved to suppress the methamphetamine and her incriminating statements on the ground that the warrantless searches were not justified by any exception to the warrant requirement of Article I, section 9, of the Oregon Constitution. The state filed a prehearing memorandum of law in opposition to the motion. At the conclusion of the evidentiary hearing, the trial court took the matter under advisement and granted defendant leave to file a posthearing memorandum. The state also filed a written closing argument. Ultimately, the trial court denied defendant's motion to suppress, concluding that the initial x-ray screening of the purse did not violate defendant's constitutional rights and that once the image on the screen had been identified by defendant as a marijuana pipe, further search of the purse was warranted as a search incident to arrest. On appeal, defendant argues that the initial x-ray screening of the purse was an illegal search and that the subsequent

searches of the contents of the purse were not justified as searches incident to arrest.[2]

Preliminarily, the state argues that defendant addressed only the constitutionality of the initial x-ray screening below and has therefore failed to preserve her argument regarding the subsequent searches. We have reviewed the entire record, including the parties' memoranda, and conclude that defendant properly preserved both issues.

The first issue is narrowly confined to the legality of the x-ray screening of defendant's purse. The x-ray exposed the contents of defendant's purse that were otherwise concealed and, therefore, constituted a search because it involved her interest in freedom from scrutiny by government agents. However, an exception to the requirement of a warrant under Article I, section 9, exists when a search is authorized by voluntary consent. *State v. Bea*, 318 Or 220, 229, 864 P2d 854 (1993). Voluntary consent may be manifested by conduct. *State v. Ragsdale*, 34 Or App 549, 554-55, 579 P2d 286, *rev den* 283 Or 503 (1978).

Only the deputy testified at the suppression hearing. There is no direct testimony that defendant placed her purse on the conveyor belt of the x-ray machine. When the deputy arrived at the x-ray screening location, defendant's purse was already inside the machine and the image of its contents was on display. It is consistent with the trial court's ruling and inferable from the fact that the purse was inside the machine that defendant had acted to place it there. Defendant does not contend to the contrary. Also, the uncontroverted evidence is that anyone who did not wish to have his or

---

[2] On appeal, defendant also argues that the initial screening is prohibited by the Fourth Amendment to the United States Constitution. She did not raise that argument to the trial court. Therefore, we decline to address it on appeal. Additionally, the state argues that we should decide this case under the Oregon Constitution as amended by the voters in Ballot Measure 40. As we have previously stated:

"[B]ecause the Supreme Court has the matter under advisement, it would be of no benefit to decide the applicability and meaning of relevant Ballot Measure 40 issues [and] it would be of no benefit simply to warehouse all criminal cases until the Supreme Court decides the matter. Accordingly, we decide this case without regard to Ballot Measure 40 and leave it to the parties to seek review as appropriate following the Supreme Court's anticipated decision." *State v. Neilsen*, 147 Or App 294, 296, 936 P2d 374 (1997).

her hand-carried items subjected to the scrutiny of the x-ray machine was free to leave the courthouse without subjecting the personal items to the x-ray process. We conclude that, by placing her purse on the conveyor, defendant impliedly consented to the x-ray screening search, and the warrant requirement of section 9 is not implicated.

After defendant confirmed the deputy's suspicion that the image on the x-ray screen was a marijuana pipe, the deputy seized the purse and emptied its contents in order to find the marijuana pipe.[3] He also told her that he was going to search her purse. The state argues that the courthouse security policy allows for physical inspection of hand-carried items under certain circumstances. The deputy testified, however, that once he determined that the image on the screen was a marijuana pipe, he undertook to investigate the crime of possession of marijuana and was no longer concerned with courthouse security. We accept his testimony at face value and conclude that the focus of his new inquiry required that his actions be supported by something other than the security policy.

The trial court ruled that his action was justified by probable cause to effect an arrest for a crime. A police officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed a criminal offense. ORS 133.310(1). A search incident to arrest is authorized even if the officer has yet to actually arrest the person being searched, if the arrest is supported by probable cause. *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). The test for probable cause is whether the officer actually believed that a defendant had committed a crime and whether that belief was objectively reasonable under the circumstances. *Id.*

At most, the possession of the marijuana pipe could objectively support a belief by the deputy that defendant was in possession of less than an ounce of marijuana, a violation under ORS 475.992(4)(f). Discovery of the pipe alone does not support probable cause to believe that defendant had more

---

[3] At that point, the officer was authorized to seize the marijuana pipe as evidence. Any further search for seizeable things was required to be supported by probable cause.

marijuana in her purse. *State v. Baldwin*, 76 Or App 723, 726, 712 P2d 120 (1985), *rev den* 301 Or 193 (1986); *State v. Tallman*, 76 Or App 715, 719-20, 712 P2d 116 (1985); *see also State v. Lane*, 135 Or App 233, 239-40, 898 P2d 1358, *rev den* 322 Or 360 (1995); *State v. Cromwell*, 109 Or App 654, 658, 820 P2d 888 (1991). A person may not be arrested under ORS 133.310(1) for a violation. We conclude that the warrantless search of defendant's purse and its contents was not supported by probable cause to believe that a crime had been committed. The trial court committed error by not suppressing both the evidence discovered inside the purse and defendant's incriminating statements.

Reversed and remanded.