Argued and submitted May 27, reversed and remanded for new trial September 9, 1987

# STATE OF OREGON,
*Respondent,*

*v.*

# DARIN REED PENNEY,
*Appellant.*

(10-86-01197; CA A41833)

742 P2d 660

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant appeals his conviction on two counts of possession of a controlled substance. He assigns as error the trial court's denial of his motion to suppress evidence that he contends was seized after an unlawful stop. We reverse.

Officer Shadwick testified that, at about 2 a.m., he saw defendant walking through an alley away from Eugene's downtown pedestrian mall. When his patrol car came into defendant's view, defendant turned around and headed back toward the mall. A short game of cat and mouse ensued, during which defendant started to run and the pursuing Shadwick drove the wrong way on a one way street and through the mall. The chase ended when Shadwick pulled up behind defendant and stopped approximately ten feet away from him. As the officer got out of the car, defendant turned around, approached him and, without being asked, handed him his driver's license. Shadwick then asked defendant why he had un. He replied, "Because I was scared—I thought you were following me."

At approximately the same time, Officer Hanson-Jordan and two other officers arrived in separate vehicles. Shadwick testified that Hanson-Jordan approached defendant and asked him what was causing a noticeable bulge in his jacket. Defendant answered, "Just some marijuana" and, after Hanson-Jordan asked to see it, pulled out a baggie containing marijuana. The officers then searched defendant and found another baggie of marijuana and a small plastic bag containing cocaine. Defendant, who cried intermittently throughout the encounter, was then arrested and advised of his *Miranda* rights.

Defendant testified that Shadwick asked him for his driver's license and, immediately after he had handed it to him, went back to his car and radioed the dispatcher to check for warrants. Shadwick testified that he did not return to his car and that he ran the warrant check from his hand-held radio, although he could not remember precisely when he did so. Defendant also testified that he did not identify the bulge under his jacket as marijuana. He testified that the marijuana was discovered along with the other drugs when the officers searched him after Hanson-Jordan pushed against his jacket and said, "What is this, dope?" and he said, "No."

The trial court did not make any specific findings of fact or determine whether defendant had been "stopped." However, in denying defendant's motion to suppress the marijuana and cocaine, it concluded that "the statements made by defendant were freely and voluntarily made." We infer from that that the trial court found that defendant did say that the bulge in his jacket was marijuana.

On appeal, defendant contends that the drugs were seized after an unlawful stop. The state "concedes," as it did at the suppression hearing, that Shadwick had no reasonable suspicion that defendant had committed a crime at the time of their first encounter and, therefore, that, if defendant's restraint amounted to a "stop," it would not have been justified. Because the case was tried on that basis, we accept the state's concession for the purpose of review without addressing its merits. The state argues, however, that, before defendant told the officers that the bulge in·his jacket was marijuana, no actual stop had occurred; thus, it is not appropriate for the court to apply a stop analysis. In the alternative, the state contends that, even if defendant was illegally stopped, the evidence is admissible, because his admission that the bulge in his jacket was marijuana was voluntary.

The Supreme Court has distinguished three types of encounters between police officers and citizens: an arrest, which must be based on probable cause; a stop, or "temporary restraint of the citizen's liberty" by "physical force or show of authority," justified by reasonable suspicion of criminal activity; and "mere conversation" without restraint of liberty, which requires no justification. *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978). "A citizen has been restrained when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *State v. Smith,* 73 Or App 287, 291, 698 P2d 973 (1985).

■    Here, we conclude that defendant was stopped when Shadwick pulled up and got out of his patrol car ten feet behind him. That represented the culmination of a police pursuit by a police officer in a patrol car of a pedestrian through and around a pedestrian mall. It is highly unlikely that, at that precise point, a reasonable person would have felt free to walk away. Defendant had already demonstrated that he had no desire to engage the police in conversation when he

changed directions on first sighting Shadwick's patrol car and attempted to elude the police. The officer responded by pursuing him through the mall. Given the officer's initial response, it is clear that defendant had no reason to assume that he was free to leave after the officer caught up with him.

Because we accept the state's concession that a stop was not justified, the sole remaining—and determinative—issue is whether, given the illegal stop, the trial court nevertheless correctly denied defendant's motion to suppress the marijuana and cocaine, because defendant's admission that the bulge in his jacket was marijuana was voluntary. In *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981), the court held that an illegal stop did not require suppression of evidence discovered during a subsequent search, if the defendant consented to the search voluntarily. Assuming, by analogy, that an illegal stop does not necessarily require suppression in this case, whether the evidence seized after defendant was stopped is admissible depends on whether his admission that the bulge in his jacket was marijuana was "given by defendant's free will or was the result of coercion, express or implied." *State v. Kennedy, supra,* 290 Or at 502.

A determination of voluntariness requires an examination of the totality of the circumstances, with a greater burden on the state to show voluntariness than if no illegality had occurred. The standard of review is whether the historical facts are sufficient to support the trial court's finding of voluntariness by clear and convincing evidence. *State v. Kennedy, supra.*

Although the trial court did not assist us by making any findings of historical fact, the record indicates that at least four uniformed police officers had converged on the scene before defendant made the incriminating statement. It was two o'clock in the morning, and defendant had been stopped by a police officer who had chased him through a pedestrian mall in his patrol car. He was caught—with no place to go nor any way to get there. He made the incriminating statement in response to a police officer's inquiry, which, because he had been stopped, did not constitute "mere conversation." Given the totality of the circumstances, we hold that defendant's statement was not voluntary. Therefore, because the evidence that was subsequently seized is the fruit of that

poisonous tree, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded for a new trial.