Argued and submitted January 20, reversed and remanded June 8, reconsideration denied August 12, petition for review denied September 20, 1988 (306 Or 661)

## STATE OF OREGON,
*Appellant,*

*v.*

## VERLIN LAWRENCE JACKSON,
*Respondent.*

(10-87-01583; CA A44123)

755 P2d 732

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

David J. Phillips, Eugene, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

Newman, J., dissenting.

## DEITS, J.

Defendant was charged with driving while suspended. ORS 811.175. The state appeals the court's order granting defendant's pretrial motion to suppress evidence gained as a result of an allegedly unlawful stop. We reverse and remand.

At approximately 8:40 a.m., Officer Walker, of the Springfield Police Department, in uniform and driving a marked car, observed defendant driving and looking nervously at him. Walker followed him for a few blocks. He saw defendant turn into an apartment complex parking lot, get out of the car and approach an apartment. As he made a U-turn to return to the parking lot, Walker momentarily lost sight of defendant. He then saw defendant crouched on the passenger side outside the car. Defendant got in the car and sat in the passenger seat. Walker parked his car, approached defendant and asked him what he was doing. He responded that he was waiting for a friend. Walker then asked if he could see some identification. Defendant gave him an identification card. Walker then asked defendant whether he had been driving earlier and why he had switched to the passenger seat. He replied that he had not been driving, because his license was revoked. Walker ran a records check and confirmed the revocation.

The trial court concluded that a stop occurred just before Walker obtained defendant's identification. It suppressed all evidence gained from that stop, because Walker did not have the necessary reasonable suspicion that defendant had committed a crime to justify a stop under ORS 131.615. The state concedes that a stop was not justified but argues that the encounter between defendant and Walker was not a stop.

There are three generally recognized types of encounters between police and citizens: (1) an arrest based on probable cause; (2) a "stop" or temporary restraint of a person based on a reasonable suspicion that the person has committed a crime, ORS 131.615(1), or based on the commission of a traffic infraction or violation in the officer's presence, ORS 810.410; ORS 153.110(3); ORS 133.072; and (3) questioning without restraint of liberty, that is, mere conversation, which requires no justification. *State v. Painter,* 296 Or 422, 676 P2d 309 (1984); *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978). A

stop occurs when a police officer restrains a person's liberty by physical force or a show of authority. *State v. Warner, supra,* 284 Or at 162. A person is "restrained" when, in view of all the circumstances, a reasonable person would have believed that he was not free to leave. *Terry v. Ohio,* 392 US 1, 86 S Ct 1862, 26 L Ed 2d 889 (1968); *State v. Spenst,* 62 Or App 755, 662 P2d 5, *rev den* 295 Or 447 (1983). The question of whether a stop occurred must be determined in light of the facts of each case. *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981).

■ We conclude that Walker's inquiry and request for identification was not a sufficient show of authority to constitute a stop. Defendant pulled into a parking lot and stopped on his own, not in response to any official action on the part of Walker. That is in contrast to *State v. Penney,* 87 Or App 357, 742 P2d 660 (1987), where we held that a stop had occurred when an officer pulled up and got out of his patrol car behind the defendant, whom he had been chasing through a pedestrian mall. Walker not did turn on his overhead lights. He got out of his car and approached defendant, who remained sitting in the car. Defendant was not required to alter his course and was not restrained from leaving. *See State v. Canape,* 46 Or App 453, 611 P2d 1190 (1980). Walker asked defendant what he was doing and for identification. Although he was not required to respond, defendant voluntarily did so by answering the question and giving Walker identification.

The request for and receipt of identification did not elevate the encounter to a stop. It is the *retention* of a license or identification card, usually for investigatory purposes, that restrains a person from leaving. *See, e.g., State v. Painter,* 296 Or 422, 676 P2d 309 (1984). It was immediately after Walker's request for identification, and *before* he retained it for record check purposes, that defendant admitted that his license had been revoked. It was at that point, as the trial court found, that Walker had the necessary reasonable suspicion that a crime had been committed to justify a stop and probable cause to arrest defendant. Walker made his inquiry and request for identification without such show of authority that a reasonable person would believe he was being held against his will. The trial court erred in granting defendant's motion to suppress.

Reversed and remanded.

**NEWMAN, J.,** dissenting.

The majority recognizes that until defendant admitted that his license was revoked, Walker did not have "the necessary reasonable suspicion that a crime had been committed to justify a stop." 91 Or App at 428. It first asserts, however, that Walker's actions, up to and including the request for identification, were not a sufficient show of authority to constitute a stop. It then suggests that, in any event, Walker did not stop defendant before he admitted the revocation. Even if the majority were correct on its first point, which it is not, it is wrong on its second. We should affirm the trial court.

We all agree that Walker lacked any reasonable suspicion until defendant had admitted that his license was revoked. However, because of what preceded it, the initial inquiry and request for identification was a sufficient show of authority to lead a reasonable person to believe that he was not free to leave. *See State v. Painter,* 296 Or 422, 676 P2d 309 (1984). Defendant was trying to avoid the officer, who had followed his car into the parking lot of an apartment complex. Before the officer arrived, defendant had stopped his car, crouched down outside it on the passenger side and then sat in the passenger seat. The officer decided to investigate. His written report read:

> "I contacted him and obtained an Oregon ID card. He said that he was waiting for a friend. I asked him why he was driving the car and he denied driving. He claimed that [the friend] was driving. I told him that I saw him driving the vehicle and that nobody else was in it. He maintained that I was wrong and that he wasn't driving. [Defendant] said he knew he was revoked. A records check confirmed that [defendant] was revoked for habitual offender as of 4-9-86."

The majority apparently sees the initial encounter as mere conversation in which defendant voluntarily participated. The trial court more aptly described it:

> "So it's sort of a—I guess a direct approach by the officer rather than something that could be considered the least bit casual and I think it definitely focused on this defendant and knows that the defendant doesn't want to talk to him. * * * He's got suspicions that this defendant is involved in something, and the first thing he said is, 'What are you doing? Why are you here?' It's not like, 'Do you live around here,' or 'Could

I see some identification,' or whatever. It's 'What are you doing here?' * * * and I think you'd have to conclude it was clear to the defendant he wasn't free to leave."

The trial court properly considered all of the circumstances surrounding the encounter, including the preceding events and the character of the inquiry. In *State v. Penney,* 87 Or App 357, 742 P2d 660 (1987), we also focused on the defendant's attempt to avoid the police and rejected the state's argument that the encounter was "mere conversation":

"Defendant had already demonstrated that he had no desire to engage the police in conversation when he changed directions on first sighting [the officer's] patrol car and attempted to elude the police. The officer responded by pursuing him through the mall. *Given the officer's initial response, it is clear that defendant had no reason to assume that he was free to leave after the officer caught up with him.*" 87 Or App at 360. (Emphasis supplied.)

I agree with the trial court that defendant could reasonably believe that he was not free to leave after Walker followed him into the parking lot, made the initial contact and requested identification.

Even if the majority is correct that the initial contact and request for identification did not constitute a stop, it is wrong when it concludes that Walker had not stopped defendant before he admitted the revocation. The majority concedes that Walker could have formed a reasonable suspicion to justify a stop only *after* defendant had said that. 91 Or App at 428. It then attempts to distinguish between Walker's retention of defendant's identification and his retention of that identification for record check purposes. It states:

"It was immediately after Walker's request for identification, and *before* he retained it for record check purposes, that defendant admitted that his license had been revoked. It was at that point, as the trial court found, that Walker had the necessary reasonable suspicion that a crime had been committed to justify a stop and probable cause to arrest defendant." 91 Or App at 428. (Emphasis in original.)

First, the facts show that defendant did not admit that his license was revoked *immediately* after Walker's request for identification. As the majority opinion recognizes, 91 Or App at 427, Walker made contact with defendant and

requested and obtained his identification card. He then proceeded to question defendant. He asked defendant what he was doing; defendant said he was waiting for a friend. He asked him why he was driving; defendant denied driving. He insisted that he had observed defendant driving; defendant insisted that he had not been driving. Only after those exchanges, during which Walker continued to retain defendant's identification, did defendant admit that his license was revoked.

Second, the majority suggests that it is the retention of the license or identification card for investigatory purposes that restrains a person from leaving. It is true that the police in *State v. Painter, supra,* retained the defendant's expired Virginia license and credit cards and then ran a radio check, but that opinion in no way turns on the purpose of the retention. Rather, that opinion emphasizes that the officer continued to hold the defendant's license and credit cards and that, accordingly, the defendant was unable to leave. Likewise, it is not important here that Walker had not run a record check by the time that defendant admitted the revocation. He had continued to retain defendant's identification. Regardless of the purpose for which he retained it, defendant could reasonably believe that he was not free to leave.

The trial court did not err when it granted defendant's motion to suppress.