Argued and submitted October 20, 1989, affirmed February 14, 1990

# STATE OF OREGON,
*Respondent,*

*v.*

# DONALD WAYNE QUIGLEY,
*Appellant.*

## (J87-0898; CA A60023)

786 P2d 1274

James R. Arneson, Roseburg, argued the cause for appellant. With him on the brief was Arneson & Wales, Roseburg.

Timothy Sylwester, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Buttler, P. J., dissenting.

## WARREN, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He assigns as error the trial court's denial of his motion to suppress evidence found in a warrantless search of his vehicle. We affirm.

Officer Ransdell observed defendant's vehicle in a deserted parking lot at Longfiber County Park on a rainy afternoon. The windows were "fogged up," and Ransdell pulled over to see if there was a problem. He knocked on the driver's window and asked if everything was all right. Defendant stepped out of the vehicle on his own initiative. He said, "You remember me. You arrested me for driving while suspended." After defendant filled in the details of the earlier arrest, Ransdell remembered him. Because it was raining heavily, Ransdell suggested that they move under a nearby tree. Defendant told the officer that his license was now valid. Ransdell asked to see it, and he handed it to him. During the conversation, Ransdell asked if defendant owned the vehicle and whom he was with. Less than a minute after defendant showed his driver's license, Ransdell asked if he could see the vehicle registration.

Defendant went to the vehicle and asked the passenger, Pinnel, for the registration. When Pinnel opened the door, Ransdell, from five feet away, smelled freshly cut marijuana. He called in a records check on defendant and Pinnel and discovered an outstanding warrant for Pinnel's arrest. As she got out of the vehicle, he saw a baggie containing about one-half ounce of marijuana on the passenger seat. When he reached in to seize it, he saw marijuana seeds, leaves and stems, which he recognized as fresh strippings, on the seat and on the floor. Surrounded by the marijauna was a container covered by a paper sack. Pinnel said that the sack contained groceries, but the opening of the sack was on the floorboard. Ransdell reached inside it and discovered a bucket full of marijuana. He looked inside other bags in the vehicle and found more marijuana.

Defendant first contends that the marijuana should be suppressed, because the officer lacked reasonable suspicion for the stop. The state responds that, by the time the encounter became a stop, the officer had reasonable suspicion to support it. The critical issue is when the stop occurred.

An officer may stop a person only when he reasonably suspects that the person has committed a crime. ORS 131.615(1). Mere conversation, however, requires no justification. *State v. Warner,* 284 Or 147, 585 P2d 681 (1978). A stop is defined as "a temporary restraint of a person's liberty." ORS 131.605(5). "A person is 'restrained' when, in view of all the circumstances, a reasonable person would have believed that he was not free to leave." *State v. Horton,* 86 Or App 199, 202, 738 P2d 609 (1987). In judging what a reasonable person would believe, we look for a show of authority by the officer. *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981).

The early stages of the encounter were not a stop. When Ransdell drove into the parking lot, defendant's vehicle was already parked. Ransdell did not use his overhead lights or otherwise prevent defendant from pulling away, and defendant got out of the vehicle of his own volition. *Compare State v. Walp,* 65 Or App 781, 672 P2d 374 (1983). Defendant exhibited a desire to talk with the officer by bringing up the earlier arrest and volunteering that his license was now valid. Ransdell's request to see the license was not a show of authority but a reasonable response to the topic that defendant had initiated. *See State v. Jackson,* 91 Or App 425, 755 P2d 732, *rev den* 306 Or 661 (1988).

Ransdell continued the conversation by asking about the vehicle's ownership and asking to see its registration. That did not elevate the encounter to a stop. *See State v. North,* 72 Or App 1, 694 P2d 990, *rev den* 299 Or 154 (1985). Defendant had started the conversation, and the request for the vehicle registration was not sufficient to make defendant reasonably believe he was not free to end the conversation and leave. When Pinnel opened the door to hand defendant the registration, Ransdell smelled freshly cut marijuana, which provided the reasonable suspicion basis for the stop that occurred when Ransdell took the license and registration and ran a records check on defendant and Pinnel. *State v. Tetro,* 98 Or App 492, 779 P2d 1080 (1989).

Defendant contends next that the search of the vehicle was illegal. The trial court held that, when Ransdell saw the baggie containing about one-half ounce of marijuana in plain view, he had probable cause to arrest Pinnel for possession of a controlled substance and that, therefore, the search

was proper incident to arrest.[1] Defendant disputes the trial court's conclusion that Ransdell had probable cause. A person commits the crime of possession of marijuana only if she possesses an ounce or more. ORS 475.992(4)(f). We have held that the discovery of less than one ounce of marijuana "cannot *by itself* create probable cause to search for more." *State v. Tallman,* 76 Or App 715, 720, 712 P2d 116 (1985). (Emphasis supplied.) We recognized in *Tallman,* however, that the discovery of less than one ounce is a relevant fact that, when combined with other facts, may create probable cause. 76 Or App at 721.

Ransdell saw, not only the baggie, but marijuana seeds, leaves and stems on the seat and on the floorboard. He recognized the vegetation as fresh strippings. He perceived "a very strong odor of fresh marijuana." He explained:

"[O]ne stem produces so much marijuana. More stems produce more marijuana. The quantity of stems present, seed and other stuff, indicated that there was probably more than that one baggy [sic] of marijuana."

Ransdell had probable cause to believe that defendant was in possession of at least one ounce of marijuana. Therefore, he was entitled to search for and seize the evidence. *See State v. Owens,* 302 Or 196, 729 P2d 524 (1986).

Affirmed.

**BUTTLER, P. J.,** dissenting.

Because I believe that a "stop" occurred when the officer asked defendant for the registration for his automobile and that the stop was not supported by a reasonable suspicion that defendant or his passenger had committed a crime, I dissent.

There is no problem with regard to the officer's checking with defendant to "see if everything is all right"; that was appropriate under the circumstances. Neither is there a problem with the officer's asking defendant for his driver's license after defendant reminded the officer that he had arrested him previously for driving while his license was suspended. However, after defendant produced his license, the

---

[1] The trial court also held that the search was lawful under the automobile exception. We need not reach that issue.

officer had no authority, as the state conceded at oral argument, or reason to ask for the automobile registration.

When the officer asked defendant to produce the registration, the situation ceased to involve mere conversation. The officer was exercising his authority as a police officer in a manner that would make a person in defendant's position reasonably believe that he had to comply. *State v. Penney,* 87 Or App 357, 742 P2d 660 (1987). The officer's conduct turned the conversation into a stop by restraining defendant's liberty. ORS 131.605(5). The stop was not supported by a reasonable suspicion that defendant had committed a crime. ORS 131.615; *see State v. Warner,* 284 Or 147, 585 P2d 681 (1978). Accordingly, all of the evidence that was acquired or seized after the invalid stop should have been suppressed.

It is clear that, to the extent that the police may engage in what has been described as a "community caretaker" function, that function may not be used as a "Trojan Horse" to gather evidence of otherwise unsuspected criminal conduct. *See State v. Bridewell,* 306 Or 231, 759 P2d 1054 (1988). That is what happened here.

Accordingly, I respectfully dissent.