Argued and submitted September 30, 1999, affirmed March 8, petition for review denied June 27, 2000 (330 Or 375)

# STATE OF OREGON,
*Respondent,*

*v.*

# SCOTT EVO VENTURI,
*Appellant.*

## (97-3342C3; CA A102224)

998 P2d 748

Kimi Nam, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Warren, S. J.

## EDMONDS, P. J.

Defendant appeals his conviction for possession of methamphetamine, a controlled substance, ORS 475.992(4), following a trial to the court on stipulated facts. He assigns error to the denial of his motion to suppress evidence of the controlled substance seized from a backpack found in his vehicle. He also assigns error to the trial court's order that he pay $500 in court-appointed attorney fees. We affirm.

At the hearing on defendant's motion to suppress, Officer Kelley testified about the circumstances leading up to and including defendant's arrest. Around 2:32 a.m., Kelley noticed defendant's vehicle parked by itself and backed up against a chain-linked fence in a parking lot near closed buildings with no other vehicles or people in the vicinity. The uniformed officer parked his patrol car nearby without turning on his overhead lights or blocking defendant's path. He approached defendant's vehicle on foot and inquired at the driver's side window what defendant and his passenger were doing there. They explained that they had parked "to make out" for a while before continuing to their out-of-town destination. Kelley asked defendant for identification. He then called in on the microphone on his shirt and requested a record check on defendant. No more than three minutes had elapsed before dispatch reported that defendant's driver's license was valid.

Kelley also inquired whether there were any weapons or narcotics in the vehicle. After defendant and his passenger replied in the negative, the officer asked, "Do you mind if I check?" Defendant said, "Go ahead." At that point, defendant got out of the vehicle, and Kelley patted him down. The passenger also underwent the same procedure. Kelley testified that both persons were very cooperative. Upon checking the car, Kelley found a backpack-type bag under the driver's seat. He asked defendant if he could look in the bag, and defendant said he could. Kelley asked if he would find anything in the bag, and defendant replied that he might find some "residue bags" and possibly some syringes. Indeed, that is what the officer found when he searched the bag, which led

to defendant's arrest.[1] Kelley testified that at no time before the arrest was defendant told he could not leave and that the maximum length of time between the initial contact and the time of the search was "maybe, five minutes."

At trial and on appeal, defendant has invoked both the Oregon and United States Constitutions in support of his argument that the controlled substances found in the bag should be suppressed. We first consider his arguments under Article I, section 9, of the Oregon Constitution. *Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981). Defendant argues that Kelly was without authority to check his driver's license, that the retention of his driver's license after the records check constituted an illegal stop and that the retention of his license and the other circumstances caused him to involuntarily consent to the search.

Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

While a warrantless search is *per se* unreasonable under Article I, section 9, consent is an exception to the rule. *State v. Larson*, 141 Or App 186, 197, 917 P2d 519, *rev den* 324 Or 229 (1996). Even if defendant's liberty was unlawfully interfered with by the officer's record check, he is not entitled to suppression of the seized evidence if he voluntarily consented to the search and Kelley did not exploit the alleged illegality in gaining his consent. In *State v. Rodriguez*, 317 Or 27, 38-39, 854 P2d 399 (1993), the Supreme Court explained:

---

[1] The trial court found that "the testimony of Officer Kelley is truthful and reliable" and that "it is more likely than not that the officer still had possession of the defendant's driver's license when he requested consent to search." Although the defendant argues that Kelley retained his license after defendant explained the reason for his presence in the parking lot and after his identity was confirmed, Kelley testified that he did not recall when he returned the license. He also testified, "At * * * one point or another, I'm sure I returned it. I didn't keep his license."

"Unlawful police conduct occurring before a search made pursuant to a person's consent may affect the admissibility of evidence seized during that search * * *, the unlawful conduct may bear on the issue of voluntariness. That is, the unlawful conduct may have some effect on the state of mind of the person giving the consent, affecting whether the consent is a voluntary act of that person's free will. Where the unlawful conduct bears on the voluntariness of the consent, as in any other case where voluntariness is at issue, the state must prove by a preponderance of the evidence that the consent was voluntary. *See, e.g., State v. Paulson,* 313 Or 346, 351-52, 833 P2d 1278 (1992) ('Under the consent exception to the warrant requirement, the state must prove by a preponderance of the evidence that someone having the authority to do so voluntarily gave the police consent to search the defendant's person or property.'). If the state fails to meet that burden, then the consent is invalid, and the search is treated as 'unreasonable' under Article I, section 9. In that event, evidence seized during the search must be suppressed to vindicate the defendant's right to be secure against the unreasonable search." (Footnotes omitted.)

In reviewing the voluntariness of defendant's consent, we are bound by the trial court's findings of historical facts if there is evidence in the record to support them. We also give weight to the trial court's credibility findings. If findings are not made on all issues, and there is evidence from which facts could be decided in more than one way, then we will presume that the facts were decided in a manner consistent with the trial court's denial of the motion to suppress. *Ball v. Gladden,* 250 Or 485, 487-88, 443 P2d 621 (1968). Ultimately, the determination about whether a consent to search is voluntary is a legal issue that we review independently, based on the trial court's findings that are supported by the evidence. *State v. Stevens,* 311 Or 119, 135, 806 P2d 92 (1991).

■■ In determining whether defendant voluntarily gave Kelley consent to search, we "examine the totality of the facts and circumstances to see whether the consent was given by [the consenting party's] free will or was the result of coercion, express or implied." *State v. Kennedy,* 290 Or 493, 502, 624 P2d 99 (1981). Kelley testified that his patrol car did not

block defendant's path and that he had not turned on the car's flashing lights before he approached defendant's car. He did not draw his gun, although he was in uniform and armed. At the time that Kelley asked for and received defendant's consent to search, he was the only officer present. There is no evidence that Kelley made any overt threats to induce the consent. In other words, there is nothing about the circumstances surrounding Kelley's initial contact with defendant that suggests that a coercive environment existed before Kelley asked permission to search. *See State v. Jackson*, 91 Or App 425, 428, 755 P2d 732, *rev den* 306 Or 661 (1988) (holding that no stop occurred during a police/citizen encounter when the officer requested identification from the defendant).

Nevertheless, defendant argues that Kelley's retention of his driver's license created a coercive atmosphere because defendant was unable to leave the scene without his license. However, it does not necessarily follow from that restraint of defendant's liberty that defendant's will was overborne, causing his consent to be involuntary. *Cf. State v. Powelson*, 154 Or App 266, 274, 961 P2d 869 (1998) (holding that the defendant's consent was involuntary because the officers made it clear to him that if he failed to consent, he would be detained). As the court said in *Rodriguez*, the issue is whether the purported illegality affected defendant's free will. There is no evidence in this case that defendant was told he would not get his license back if he failed to consent to the search. Kelley was the only witness called to testify in the hearing. He testified that he made no "threats or promises" to defendant, and the trial court found his testimony credible. Kelley also said he never told defendant that he was not free to leave the scene, and there is no evidence that defendant desired or asked to leave.[2] Under the totality of the circumstances, we conclude that the state has demonstrated by a preponderance of evidence that defendant told Kelley to "go

---

[2] On appeal, defendant asserts that he "did not have the opportunity to testify at the motion hearing so it is not clear what [his] state of mind was at the time of the illegal seizure." To the extent that defendant is complaining of procedural error, we observe that upon his renewal of the motion to suppress, the trial court asked defendant if there was anything that he wanted to testify to and defense counsel responded "no." The trial court asked again if defense counsel meant to call defendant as a witness, and the answer was again "No."

ahead" and search without any leverage being applied by the officer through the retention of defendant's license.

Defendant makes no separate arguments under the federal constitution, and we perceive no reason for a different result under that body of law. *See, e.g., Ohio v. Robinette*, 519 US 33, 117 S Ct 417, 136 L Ed 2d 347 (1996) (reiterating the totality of the circumstances test under federal law). We hold that the trial court did not err in denying defendant's motion to suppress the controlled substances found in his vehicle.

■    Next, defendant assigns error to the trial court's assessment of court-appointed attorney fees under ORS 151.487.[3] Defendant argues that there is no evidence in the record to support a finding of his ability to pay the $500

---

[3] ORS 151.487 provides:

"(1) If in determining that a person is eligible for court-appointed counsel after applying the guidelines and standards issued by the State Court Administrator under ORS 151.485, the court finds that the person has financial resources that enable the person to pay in full or in part the administrative costs of determining the eligibility of the person and the costs of the legal and other services to be provided at state expense that are related to the provision of appointed counsel, the court shall order the person to pay to the State Court Indigent Defense Account in the General Fund, through the clerk of the court, the amount that it finds the person is able to pay without creating substantial hardship in providing basic economic necessities to the person or the person's dependent family. The amount that a court may order the person to pay shall be subject to the guidelines and procedures issued by the State Court Administrator as provided in subsection (4) of this section.

"(2) Failure to obey an order under this section shall not be grounds for contempt or grounds for withdrawal by the appointed attorney, but any part of the amount ordered under this section and not paid may be:

"(a) Enforced against the person as if the order is a civil judgment; or

"(b) Enforced as otherwise permitted by law.

"(3) Except as authorized in this section, no person, organization or governmental agency may request or accept a payment or promise of payment for assisting in the representation of a person by court appointment.

"(4) The State Court Administrator shall promulgate and issue guidelines and procedures that have been approved by the Supreme Court:

"(a) For the determination of persons provided with court-appointed counsel who have some financial resources to pay in full or in part the administrative, legal and other costs under subsection (1) of this section; and

"(b) Regarding the amounts persons may be required to pay by a court under subsection (1) of this section.

"(5) The determination that a person is able to pay or partially able to pay, or that a person no longer has the ability to pay the amount ordered in subsection (1) of this section, shall be subject to review at any time by the court."

assessment. We disagree. The court had before it information that defendant was 30 years old, that he typically worked as a laborer, that he had been looking for a job through two job agencies and that he was drug free. Under those circumstances, the trial court had an adequate record and factual basis on which to impose the attorney fee assessment under the statute.[4]

Affirmed.

---

[1] Defendant does not argue that the trial court lacked authority under ORS 151.487 to impose attorney fees, *see Bailey v. Johnson*, 165 Or App 450, 997 P2d 871 (2000), nor that the court failed to follow any guidelines that had been promulgated.