219

Argued and submitted February 25, affirmed September 15, 2004

## STATE OF OREGON,
*Respondent,*

*v.*

## PAUL WILLIAM FREY,
*Appellant.*

## 01CR2395MI; A118253

97 P3d 1239

Ernest G. Lannet, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter A. Ozanne, Executive Director, Office of Public Defense Services.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer,* Judges.

LANDAU, P. J.

---

* Brewer, J., *vice* Leeson, J. pro tempore.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction for failure to report as a sex offender, ORS 181.599, assigning error to the denial of his motion to suppress evidence that he contends was obtained as the result of an illegal seizure. We affirm.

The facts are not in dispute. Police Corporal Fetsch was on night duty as watch commander at the Roseburg Police Department. In that capacity, Fetsch was in charge of the station and was responsible for supervising the police officers on duty for that shift, responding to calls, and making decisions regarding custody procedures and policies.

At 9:00 p.m., Fetsch was in his office completing some administrative tasks. At that hour, the station is completely secure; there is no public access to the building. Fetsch saw defendant walk past his doorway. Fetsch did not recognize defendant and noted that defendant appeared to be attempting to avoid eye contact as he passed, turning his face away from the officer as he walked into the adjacent room. Fetsch followed defendant into the room.

According to department policy, anyone in custody in the station must be accompanied by an officer, and all employees must receive prior authorization to enter the building. Before the arrival of a newly authorized employee, the department must be notified by e-mail or memorandum about the identity of the new employee and the hours that he or she will be in the station. In this case, Fetsch had received no such notification about defendant. Fetsch therefore contacted defendant and asked him who he was.

At that point, Fetsch did not suspect defendant of any crime, but, rather, was concerned that he did not recognize a person who had somehow obtained access to an area that was supposed to be restricted from public access. He was also concerned because there are open armories in the station and lockers where officers often keep their firearms. Defendant told Fetsch that he was with the cleaning crew. Fetsch responded that, contrary to department policy, he had not

been notified that defendant was a new addition to the cleaning crew and that, as a result, he thought that defendant was not authorized to be in the station.

Fetsch said to defendant, "May I see your ID?" Defendant agreed, but appeared quite nervous as he handed Fetsch the identification. Fetsch took the identification about 100 feet away to run an identification check with dispatch, telling defendant that he would "be right back."

Dispatch advised Fetsch that defendant was a registered sex offender and that defendant was not authorized to be in the building. Fetsch returned to defendant, gave him his identification, and told him that he would have to wait for his supervisor outside. Fetsch then escorted defendant to the door. As they walked, Fetsch asked where defendant currently lived. Defendant replied with an address, but one that was different from the address on his identification. He explained that he had been at the new address for "about a week." He then left the building.

About 30 minutes later, Fetsch went to the parking lot outside the station and found defendant seated in a van, apparently waiting for his supervisor. Fetsch suspected that defendant had lied about the amount of time that he had resided at the new address and asked him about that. Defendant admitted that, in fact, he had moved eight months before and had failed to register the new address with the authorities. Fetsch then arrested defendant for failure to report as a sex offender.

Before trial, defendant moved to suppress the evidence of his failure to report. He argued that, at the point that Fetsch asked to see his identification, the officer had seized him without reasonable suspicion that he had committed a crime. The trial court denied the motion, concluding that Fetsch had not seized defendant when he asked for his identification. The trial court reasoned that, under the applicable case law, whether a restriction of an individual's freedom of movement is constitutionally significant depends on the context in which it occurs. After recounting the foregoing facts—in particular, that Fetsch was in charge of a secure facility at a time when public access to the building was not allowed—the court explained:

"In this setting, the court finds that Corporal Fetsch's asking the defendant [for] identification and then running it through dispatch was not a constitutionally significant intrusion. Simply put, the degree of interference in this context is not significantly out of the ordinary when considering that Corporal Fetsch was in charge of the facility and checking identity of an unknown individual inside the secure area pursuant to department policy. Further, Corporal Fetsch's conduct in removing the defendant from the building after which the defendant was free to leave [was] also not out of the ordinary in that they simply implemented the department policy."

On appeal, defendant renews his argument that, when Fetsch asked to see his identification, Fetsch seized him without reasonable suspicion in violation of Article I, section 9, of the Oregon Constitution. The state argues that, under the circumstances of this case, Fetsch's request did not amount to a seizure.

On review of a motion to suppress based on the legality of a seizure, we examine the trial court's findings of fact to determine whether they are supported by constitutionally sufficient evidence and, if so, whether the trial court correctly applied the law to those facts. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). As we have noted, no one takes issue with the foregoing facts.

Under Article I, section 9, a seizure of a person occurs

"(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances."

*State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991). In this case, there is no evidence that defendant believed that Fetsch intentionally and significantly restricted his freedom of movement. The sole issue, therefore, is whether Fetsch, in fact, intentionally and significantly restricted defendant's liberty or freedom of movement. That is a fact-specific determination involving an evaluation of the totality of the circumstances of a particular case. *Id.* at 408.

■ An encounter between the police and a citizen becomes a seizure only if "[an] officer engages in conduct significantly beyond that accepted in ordinary social intercourse." *Id.* at 410. Whether conduct goes beyond that accepted in ordinary social intercourse depends upon the context. The Supreme Court, for example, has explained that the privacy interests that Article I, section 9, protects "commonly are circumscribed by the space in which they exist and, more particularly, by the barriers to public entry (physical and sensory) that define that private space." *State v. Smith*, 327 Or 366, 373, 963 P2d 642 (1998). In other words, the same conduct may or may not violate Article I, section 9, depending on the circumstances in which the conduct occurs.

In this case, Fetsch asked for, and retained, defendant's identification. Certainly, in some circumstances, the retention of identification can amount to an unconstitutional seizure. We have, for example, concluded that the retention of a license or identification card for investigative purposes during a traffic stop amounts to a seizure. *See, e.g., State v. Gonzalez-Galindo*, 146 Or App 291, 293, 932 P2d 118 (1997) (accepting state's concession that retention of identification during traffic stop constituted a seizure); *State v. Jackson*, 91 Or App 425, 428, 755 P2d 732, *rev den*, 306 Or 661 (1988) (retention of license for investigative purposes during traffic stop is a seizure). That makes sense, as the retention of a license interferes with an individual's freedom to move in a context in which the individual otherwise is free to go where he or she pleases.

In a secure police station, however, that is not the case. As the trial court correctly explained, Fetsch asked for, and retained, defendant's identification when he observed defendant at night inside in a facility to which the public is not—at least at that hour—permitted. Not even employees are permitted in the facility unless they have been given prior approval and their authorization is communicated to the watch commander. In this case, no such prior approval had been communicated to Fetsch concerning defendant. Under those circumstances, a request for and retention of identification for noninvestigative purposes hardly exceeds the boundaries of what a reasonable person ordinarily would expect. We therefore agree with the trial court that, to the

extent that retaining defendant's identification amounted to an interference with his freedom of movement, it was not a constitutionally significant interference under the totality of the circumstances.

Affirmed.