Submitted September 23, 2019, supplemental judgments imposing attorney fees reversed August 5, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CRAIG ABE ALAN McCARTHY,
*Defendant-Appellant.*

Clackamas County Circuit Court
17CR23252, 17CR36649;
A167384 (Control), A167385

473 P3d 74

Defendant appeals two supplemental judgments ordering him to pay attorney fees. First, he challenges the court collection clerk's authority to sign the judgments. Second, he challenges the trial court's imposition of attorney fees, arguing that the trial court erred because the record lacked information that he had the financial resources to pay those fees. *Held*: The court collection clerk was authorized to sign the judgments under CJ Order No. 04-031 and PJ Order No. 2015-06. Further, because ORS 151.487 requires a court to first find that a defendant has the financial resources to pay the attorney fees before it is authorized to impose them, and the record does not support an inference that the court made such a finding, the Court of Appeals accepts the state's concession that the trial court erred in imposing the attorney fees.

Supplemental judgments imposing attorney fees reversed.

Michael C. Wetzel, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

ORTEGA, P. J.

Supplemental judgments imposing attorney fees reversed.

## ORTEGA, P. J.

Defendant appeals two supplemental judgments, arguing for the first time on appeal that the trial court erred when it ordered him in each judgment to pay $120 toward court-appointed counsel, because the record lacked information that he had the financial resources to pay those fees. Defendant argues that he was not required to preserve his claim of error on the facts of this case. Alternatively, he argues, and the state agrees, that the trial court plainly erred in imposing the fees.

A court collection clerk—not a judge—signed the supplemental judgments on appeal in this case. After the briefing was complete, we requested supplemental briefing from the parties addressing the court collection clerk's authority to sign the supplemental judgments. The parties subsequently filed a joint motion asking us to decide the merits by unpublished order under ORAP 10.35, stipulating that the trial court erred in ordering the attorney-fee contribution amount absent any evidence in the record of defendant's ability to pay. Without ruling on the parties' joint motion, we renewed our earlier request for supplemental briefing on the authority of the court collection clerk to sign the supplemental judgments which, as we address below, affects our capacity to review the judgments on appeal.

In the state's supplemental brief, it contends that the court collection clerk had the authority to sign the supplemental judgments pursuant to Chief Justice Order No. 04-031 (CJ Order No. 04-031) and Presiding Judge of Clackamas County Circuit Court General Order No. 2015-06 (PJ Order No. 2015-06). Defendant disagrees that those orders or any other legal authority provide the court collection clerk with the authority to sign the supplemental judgments. As we shall explain, we agree with the state that CJ Order No. 04-031 and PJ Order No. 2015-06 legally authorize the court collection clerk to sign the supplemental judgments on appeal in this case. On the merits, we conclude that the rules of preservation do not apply here and that, as the parties agree, the trial court erred in imposing attorney fees on this record.

The following procedural facts are undisputed. On July 10, 2017, defendant was convicted of first-degree failure to appear (Case No. 17CR36649) and unlawful possession of heroin (Case No. 17CR23252). Defendant was sentenced to, among other conditions, probation.

On January 3, 2018, defendant was arraigned in-custody on allegations that he had violated his probation on both cases. While the court order signed by Judge Ulanda Watkins from that hearing does not include any information about the appointment of an attorney or the imposition of attorney fees,[1] the transcript reflects that the court appointed an attorney at the hearing but did not impose attorney fees. That same day, however, the court collection clerk signed two judgments titled, "SUPPLEMENTAL JUDGMENT RE: COURT-APPOINTED ATTORNEY FEES." The top of each judgment notes that defendant was determined to be financially eligible for court-appointed counsel and that counsel was appointed. Further, each judgment states:

"**THE COURT ORDERS:**

"Payment of the amounts listed in the Money Award are due as follows, payable to the State of Oregon:

"Amount ordered must be paid in full by 2/2/2018

"\* \* \* \* \*

"**MONEY AWARD**

"\* \* \* \* \*

"3. The total amount awarded by this judgment is $120.00 [.]"

(Boldface, underline, and uppercase in original.) And, although the court collection clerk's signature appears on each supplemental judgment below the court's order, next to the entry in the official court register for the filing of the "Order—Appointing Counsel" appears the note, "Judicial Officer: Watkins, Ulanda." Further, next to the entries in

---

[1] The court order from the January 3 hearing contains handwritten notes that the court ordered "no bail" and that defendant be placed in "full restraints," and it also notes defendant's future probation violation hearing date.

the official court register for the filing of each of the supplemental judgments that were signed by the clerk appears the note, "Judicial Officer: Authority, Administrative." Defendant appeals those judgments, arguing that the trial court erred in ordering him to pay attorney fees without evidence that he had the ability to pay them.

Before we may reach the merits of the parties' arguments, we must address whether the court collection clerk was authorized to sign the supplemental judgments at issue. That question determines whether we may consider defendant's appeal. *See* ORS 18.038(4)(c) (providing that a judgment document must include the "signature of the judge rendering the judgment, or the signature of the court administrator if the court administrator is authorized by law to sign the judgment document"); ORS 18.245 (providing that the judgment "must comply with the requirements of ORS 18.038(4)," and that those requirements are "jurisdictional for the purposes of appeal of [the] judgment"); *State ex rel Juv. Dept. v. J. W.*, 345 Or 292, 299, 193 P3d 20 (2008) (dismissing an appeal where the judgment did not meet the signature requirements of ORS 18.038(4)). We have an independent duty to ensure that a judgment is appealable even when, as in this case, the parties have not raised the issue. *A. M. v. N. E. D.*, 287 Or App 36, 37-38, 400 P3d 1036 (2017).

We begin by setting out the relevant law. A court is authorized to order a defendant to contribute toward the costs of court-appointed counsel in two ways: at the conclusion of a defendant's case at sentencing, ORS 151.505, ORS 161.665, or, as in this case, before the conclusion of a case once it is determined that the defendant is financially eligible for court-appointed counsel, ORS 151.487. ORS 151.487(1) provides, in part:

> "If in determining that a person is financially eligible for appointed counsel * * *, the court finds that the person has financial resources that enable the person to pay in full or in part the administrative costs of determining the eligibility of the person and the costs of the legal and other services to be provided at state expense that are related to the provision of appointed counsel, the court shall enter a limited judgment requiring that the person pay to the Public Defense Services Account * * * the amount that it finds the

person is able to pay without creating substantial hardship in providing basic economic necessities to the person or the person's dependent family. ***"

In 2004, Chief Justice Carson issued CJ Order No. 04-031 to establish, among other objectives, uniform procedures for circuit courts to follow in implementing the requirements of ORS 151.487. As the Chief Justice noted in the order, the procedures were used partially to help manage and reduce unnecessary cost and workload on judges and court staff resulting from the programs to recover court-appointed attorney fees. The order states that, "[w]hen a court orders payment under [ORS 151.487] for a pending probation violation in a criminal *** case, the court will reduce the order to a supplemental judgment *** and cause the supplemental judgment to be entered in the register."[2] Further, CJ Order No. 04-031 "authorizes courts to delegate, by presiding judge order *** to trial court administrators of their courts the authority to sign *** judgments and orders [issued under ORS 151.487], subject to judicial review under ORS 151.487(5)."

In 2016, Presiding Judge Herndon of the Clackamas County Circuit Court issued PJ Order No. 2015-06, authorizing the "Trial Court Administrator, *** through deputy court clerks," to sign and enter limited or supplemental judgments for court-appointed counsel.

The state argues that the court collection clerk's authority to sign the judgments in this case derives from CJ Order No. 04-031, and that the presiding judge of the

---

[2] At the time that CJ Order No. 04-031 was issued in 2004, ORS 151.487 did not specifically direct courts to use a "limited judgment" when ordering a defendant to contribute to court-appointed attorney costs. Instead, the statute provided that, if the court finds that the person has the financial resources to contribute to court-appointed attorney costs, "the court shall *order the person* to pay to the Public Defense Services Account." ORS 151.487 (2003) (emphasis added). In 2011, ORS 151.487 was amended to add the language that courts must issue a limited judgment when ordering court-appointed contribution costs under ORS 151.487. Or Laws 2011, ch 597, § 42. Neither party argues that the court's use of a supplemental judgment as opposed to a limited judgment affects the issues in this case, and we agree. *See* ORS 18.245 (noting that "the only requirements *** that are jurisdictional for the purposes of appeal of a judgment," and including ORS 18.038(1) ("judgment document must be plainly titled as a judgment"), but excluding ORS 18.038(2) ("judgment document must indicate whether the judgment is a limited judgment, a general judgment or a supplemental judgment")).

Clackamas County Circuit Court was acting pursuant to the authority of the CJ order when he delegated the authority to the trial court administrator, through deputy court clerks, to sign the supplemental judgments. Defendant disagrees, arguing that the Chief Justice did not have the authority to authorize presiding judges to delegate the signing of judgments issued under ORS 151.487 to trial court administrators. He further contends that, even if the Chief Justice was legally so authorized, CJ Order No. 04-031 authorizes the delegation of the signing of judgments to trial court administrators only, not to them through deputy court clerks.[3]

Under ORS 18.038(4)(c), a court administrator may sign a judgment document only if "authorized by law."[4] Because CJ Order No. 04-031 relies on, as relevant to this appeal, ORS 1.002 as the authority under which the Chief Justice issued the procedures in the order, we begin by examining the authority ORS 1.002 confers on the Chief Justice and presiding judges of the circuit courts.

Pursuant to ORS 1.002, the legislature has designated the Chief Justice as "the administrative head of the judicial department" who is required to "exercise administrative authority and supervision over the courts of this state consistent with applicable provisions of law and the Oregon Rules of Civil Procedure." ORS 1.002(1). The legislature has granted the Chief Justice the power to "[m]ake

---

[3] Defendant does not argue that CJ Order No. 04-031 improperly delegated to trial court administrators the authority to determine the *amount* a defendant is ordered to pay because ORS 151.487 requires such a determination to be made by a judge and not a court administrator. *See, e.g.*, *State v. Flynn*, 89 Or App 47, 49, 747 P2d 376 (1987) (concluding that, by ordering the defendant to pay an undefined amount in statutory fees "'upon direction of the probation officer commensurate with [the defendant's] financial capabilities,'" the court improperly delegated its judicial authority to determine the defendant's "ability to pay" before imposing fees because the court "cannot delegate the judicial determination required by ORS 161.665(3)"). Accordingly, we state no opinion on the merits of, or the sufficiency of the record to support, such an argument.

[4] ORS 18.038(4)(c) provides, in part:

"A judgment document must include:

"* * * * *

"(c) The signature of the judge rendering judgment, or the signature of the court administrator *if the court administrator is authorized by law to sign the judgment document*."

(Emphasis added.)

rules and issue orders," ORS 1.002(1)(a), and to take "any other action appropriate to the exercise of the powers specified in [ORS 1.002] and other law, and appropriate to the exercise of administrative authority and supervision by the Chief Justice over the courts of this state," ORS 1.002(1)(k).

Further, ORS 1.002(9) allows the Chief Justice to "delegate the exercise of any of the powers specified [in ORS 1.002] to the presiding judge of a court." Lastly, in addition to the express authority granted by ORS 1.002, the Chief Justice's administrative authority under ORS 1.002 may be implied. *See Smith v. Washington County,* 180 Or App 505, 521-22, 43 P3d 1171, *rev den*, 334 Or 491 (2002) (concluding that ORS 1.002 includes the implied administrative authority for the Chief Justice and presiding judges to regulate the security of courthouse facilities).

The "statutes that apply to the presiding judges of the judicial districts confer complementary authority [to the Chief Justice's authority] at the local level." *Id*. at 518. ORS 1.002(8) provides that "the presiding judge of each judicial district of this state are the administrative heads of their respective courts." In executing their administrative duties, ORS 1.171(4) states that the "presiding judge[s] may delegate the exercise of any of the administrative powers of the presiding judge[s] *** to the trial court administrator."

Here, the Chief Justice's implied administrative authority under ORS 1.002 includes the authority to authorize courts to delegate, by presiding judge order, to trial court administrators the authority to sign judgments issued under ORS 151.487. To begin, it is well established that the Chief Justice has wide-ranging administrative authority over Oregon courts. *See Smith*, 180 Or App at 521 (concluding that "administrative authority and supervision" as used in ORS 1.002 are "broad in their scope"). As we have previously explained:

"As ordinarily understood, administrative authority encompasses the full range of management and executive policy choices involved in ensuring that an organization or institution can serve its mission. That understanding of the language is underscored by context. In particular, the legislature granted the Chief Justice the authority to

'[t]ake *any other action* appropriate to the exercise of the powers specified in this section and other law, and appropriate to the exercise of administrative authority and supervision by the Chief Justice over the courts of this state.' ORS 1.002(1)[(k)]. The broad scope of authority granted to the Chief Justice in that regard is significant in determining what powers are implicit in the grant."

*Id*. at 521-22 (emphasis in original; footnote omitted).

Moreover, signing judgments—at least in this context—qualifies as an administrative function of supervising a court system because, for example, allowing court staff to assist judges in signing judgments could reduce workload for individual judges. Indeed, reducing judicial department workload was one of the purposes of issuing the procedures in CJ Order No. 04-031, and managing workload—either directly or indirectly—is central to the Chief Justice's role as administrator and supervisor of the Oregon Judicial Department. *See, e.g.*, ORS 1.002(1)(d) (allowing the Chief Justice to set staffing levels for all courts within the Judicial Department); ORS 1.002(1)(e) (allowing Chief Justice to establish time standards for the disposition of cases); ORS 1.002(1)(f) (allowing Chief Justice to establish budgets for the Judicial Department); ORS 1.002(1)(g) (allowing Chief Justice to assign or reassign all court staff operating under the Judicial Department). Therefore, so long as the order is "consistent with applicable provisions of law," ORS 1.002(1), the Chief Justice's administrative authority includes the implied authority to designate by order who may sign judgments imposing attorney fees under ORS 151.487. *See, e.g.*, ORS 1.002(1)(k) (allowing Chief Justice to take "any other action appropriate to the exercise of the powers specified in this section and other law, and appropriate to the exercise of administrative authority and supervision by the Chief Justice over the courts of this state"); ORS 1.002(5) ("Rules made and orders issued by the Chief Justice under this section shall permit as much variation and flexibility in the administration of the courts of this state as are appropriate to the most efficient manner of administering each court, considering the particular needs and circumstances of the court, and consistent with the sound and efficient administration of the judicial department of government in this

state."); *see also* ORS 1.002(2)(c) (allowing Chief Justice to make rules allowing for the use of electronic signatures).

Further, because the legislature has also authorized the Chief Justice to delegate the Chief Justice's administrative authority to presiding judges, ORS 1.002(9), and has also allowed presiding judges to delegate the presiding judge's administrative authority to trial court administrators, ORS 1.171(4), the Chief Justice properly exercised his administrative authority when he issued CJ Order No. 04-031 and allowed presiding judges to delegate to trial court administrators the authority to sign judgments issued under ORS 151.487.

Defendant does not address the Chief Justice's authority under ORS 1.002, focusing instead on ORS 18.038(4)(c), ORS 18.052(1), and ORS 18.058(1), arguing that those statutes do not operate as a source of authority for the Chief Justice to allow presiding judges to delegate to court administrators the authority to sign the judgments in this case. Paragraph seven of CJ Order No. 04-031 provides:

> "This paragraph authorizes courts to delegate, by presiding judge order and *as allowed* under ORS 18.052(2) and 18.058(1), to trial court administrators of their courts the authority to sign ACP judgments and orders, subject to judicial review under ORS 151.487(5)."

(Emphasis added.) Defendant argues that neither ORS 18.052(2) and ORS 18.058(1), cited in the CJ Order, nor ORS 18.038(4) provide the Chief Justice with the authority to promulgate the procedures at issue in this case because those statutes all "assume that a trial court administrator may sign a judgment document only if the administrator is separately 'authorized by law' to do so." Although defendant is correct on that point,[5] the order specifically and permissibly

---

[5] *See* ORS 18.052(1) (providing that the "judge must sign the judgment document *unless the court administrator is authorized by law to sign the judgment document*" (emphasis added)); ORS 18.058(1) (providing that the "court administrator shall note in the register that a judgment document has been filed if the judgment document is signed by a judge of the court, or by the court administrator *if the court administrator is authorized by law* to sign the judgment document" (emphasis added)); ORS 18.038(4) (requiring a judgment to include the "signature of the judge rendering the judgment, or the signature of the court administrator *if the court administrator is authorized by law to sign the judgment document*" (emphasis added)).

relied on ORS 1.002 for authority to issue the procedures outlined in the order. Accordingly, the Chief Justice was authorized to allow courts to delegate, by presiding judge order, to trial court administrators the authority to sign judgments issued under ORS 151.487.

The remaining question is whether the presiding judge had the authority to delegate the signing of judgments issued under ORS 151.487 to the trial court administrator through a deputy court clerk, as provided in PJ Order No. 2015-06. Like the Chief Justice, presiding judges are authorized to "[m]ake rules, issue orders and take other action appropriate to [the] exercise [of the presiding judge's administrative authority]." ORS 1.171(2)(b). A presiding judge may also "delegate the exercise of any of the administrative powers of the presiding judge *** to the trial court administrator," ORS 1.171(4), who, in turn, has the "duties, powers and functions prescribed by law or by rules of the circuit courts" and may "delegate powers of the office of trial court administrators to [their] employees," ORS 8.225(1), (4). Deputy court clerks, including the court collection clerk who signed the judgments in this case, are employees of the trial court administrator. *See Oregon AFSCME Council 75 v. OJD - Yamhill County*, 304 Or App 794, 801, 469 P3d 812 (2020) ("Under the Chief Justice's rules, a [trial court administrator] *** has supervisory authority over all staff, including judicial staff, for the [trial court administrator's] respective court, unless the presiding judge in writing specifies otherwise. [Judicial Department Personnel Rules] 1.02(8).").

Here, once the presiding judge authorized the trial court administrator to sign the types of judgments at issue in this case, ORS 8.225(4) allowed the trial court administrator to delegate that same administrative authority to court employees, including court clerks. Accordingly, we conclude that the court collection clerk was authorized to sign the supplemental judgments in this case. We therefore have jurisdiction over the appeal and turn to the merits.

Although defendant raises his argument for the first time on appeal, we conclude that the rules of preservation do not apply in this case because the asserted error appeared for the first time in the judgment. *See, e.g.*, *Walker v. State of*

*Oregon*, 256 Or App 697, 699, 302 P3d 469, *rev den*, 354 Or 62 (2013) (concluding that the petitioner was not required to preserve an issue where purported error appeared for the first time in the judgment because "petitioner had no reason to know that [the judgment]" would include the asserted error). At defendant's arraignment hearing, the trial court appointed an attorney but made no mention that it would be imposing attorney fees. However, the supplemental judgments that reflect the court's order appointing counsel included the imposition of attorney fees. On these facts, defendant "cannot be required to [have] raise[d] an objection contemporaneously with a trial court's ruling * * * when [defendant] was not on notice of the trial court's intended action and had no opportunity to be present when the trial court acted." *State v. DeCamp*, 158 Or App 238, 241, 973 P2d 922 (1999).

On the merits, and relying on ORS 151.505(4) and ORS 161.665(4), defendant argues that "each [of those statutes] provide that a court may order the defendant to pay court-appointed attorney fees only if the defendant 'is or may be able' to pay them." Defendant continues that a "court may not impose attorney fees when the record is 'silent' regarding ability to pay. *State v. Pendergrapht*, 251 Or App 630, 634, 284 P3d 573 (2012) [(construing ORS 151.505 and ORS 161.665)]." The state, relying on the same authorities, concedes that the trial court erred, adding in its supplemental brief that ORS 151.487—the statute at issue here— "authorizes imposition of attorney fees only if the court 'finds that the person has financial resources that enable the person to pay,'" and that the record here contains "no evidence to support such a finding."

In accepting the state's concession that the trial court erred, we focus on ORS 151.487, the statute that authorizes the judgments in this case. As previously noted, ORS 151.487(1) provides:

> "*If* in determining that a person is financially eligible for appointed counsel under ORS 151.485, *the court finds* that the *person has financial resources that enable the person to pay* in full or in part the administrative costs of determining the eligibility of the person and *the costs of the legal*

*and other services* to be provided at state expense that are related to the provision of appointed counsel, *the court shall enter a limited judgment requiring that the person pay* to the Public Defense Services Account established by ORS 151.225, through the clerk of the court, *the amount that it finds the person is able to pay* without creating substantial hardship in providing basic economic necessities to the person or the person's dependent family. The amount that a court may require the person to pay is subject to the guidelines and procedures issued by the Public Defense Services Commission as provided in subsection (4) of this section."

(Emphases added.)

The statute requires a two-step process. First, the court must "find" that the "person has financial resources that enable the person to pay in full or in part \* \* \* the costs of the legal and other services." Second, *if* the court makes that finding, the court must next determine "the amount that it finds the person is able to pay." Because the statute requires that the court first find that a "person has [the] financial resources" to pay the attorney fees before it may impose them, the record must establish that the defendant has sufficient financial resources to pay the imposed attorney fees to infer that the court made the statutory finding. *See, e.g.*, *State v. Venturi*, 166 Or App 46, 52-53, 998 P2d 748, *rev den*, 330 Or 375 (2000) (concluding that the record was sufficient to support the court's imposition of attorney fees under ORS 151.487); *accord State v. Mickow*, 277 Or App 497, 498-500, 371 P3d 1275 (2016) (holding, in addressing the procedural requirements of imposing attorney fees under ORS 151.505 and ORS 161.665, that, "when evaluating an award of court-appointed attorney fees, we do not assume that the trial court complied with applicable statutory procedures unless the record provides some affirmative support for that assumption. Where the record contains no affirmative indication that the trial court complied with the statutory requirements for imposing fees, we will conclude that the court did not, in fact, do so.").

Here, the parties agree that nothing in the record establishes that defendant "has [the] financial resources" to pay the attorney fees that were imposed in this case. Therefore, there is no basis for the necessary inference that

the trial court made a finding that defendant had the financial resources to pay the attorney fees before imposing them. For that reason, the trial court erred in imposing the attorney fees in this case, and we reverse those judgments.

In summary, we conclude that we have jurisdiction because CJ Order No. 04-031 and PJ Order No. 2015-06 legally authorized the court collection clerk to sign the supplemental judgments on appeal in this case. Further, because ORS 151.487 requires a court to first find that a defendant has the financial resources to pay the attorney fees before it is authorized to impose them, and the record does not support an inference that the court made such a finding, we conclude that the trial court erred in imposing the attorney fees.

Supplemental judgments imposing attorney fees reversed.